D.N.S., M.D., Relator,

v.

Hon. Michael D. SCHATTMAN, Judge
348th District Court, Tarrant County,
Texas, Respondent.

No. 2–96–277–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 14, 1997.

Wallach & Moore, P.C., D. Michael Wallach, Jennifer M. Andrews, Cynthia Kent Maragoudakis, Fort Worth, for Relator.

Law Offices of Art Brender, Art Brender, Fort Worth, for Real Party.

Before DAY, RICHARDS and HOLMAN, JJ.

## OPINION

DAY, Justice.

In this original proceeding, relator D.N.S., M.D. (Dr. S.) [1] seeks mandamus relief on an order by the trial court that requires Dr. S. to produce to Michael Anderson, the real party in interest, a narrative report. Dr. S. had prepared the narrative report at the request of, and had sent it to, his professional liability insurer after Anderson had sent Dr. S. notice of a healthcare liability claim. Because the trial court abused its discretion in ordering the production of the privileged narrative report, we conditionally grant the petition for writ of mandamus.

### BACKGROUND

Anderson, the plaintiff in the underlying suit, suffered an on-the-job back injury on October 7, 1992. After submitting a claim to his employers,[2] Anderson was instructed to

---

1. For reasons unrelated to the subject matter of this proceeding, Dr. S. sought and obtained permission for this proceeding to be conducted anonymously by using his initials.

2. Anderson was employed by NLS Industries, Inc., which leased its employees from a staff leasing company, Benecorp I, Inc. Anderson claims that he thus was considered an employee of both companies.

seek medical care and to notify his employers of the name of the physician that he chose. Anderson went to Dr. S. for treatment on October 7.

During Anderson's initial examination, Anderson told Dr. S. that the only medication he had taken was Tylenol. Dr. S. diagnosed Anderson with an acute lumbosacral strain, treated Anderson, and prepared a workers' compensation report. Because Anderson had requested that payment for Dr. S.'s treatment be made through his employers' workers' compensation insurance, Dr. S.'s staff verified that Anderson's employers carried workers' compensation insurance. During the verification process, Dr. S.'s staff was told that Anderson had to submit to a drug screen because his injury was work-related. Dr. S.'s staff then informed Anderson that his medical treatment would be covered by workers' compensation insurance, but that he had to submit to a urinalysis drug screen because his injury was work-related.

Before the urinalysis was done, Anderson filled out a consent form that permitted Dr. S. to administer the urinalysis drug screen and release the results to Anderson's employers. In answer to a question on the consent form about what medication he had taken in the last thirty days, Anderson responded "Tylenol." Anderson signed the consent form and submitted a urine sample for the drug screen.

On October 12, Dr. S. received Anderson's drug screen results. The drug screen was positive for opiates and benzodiazopines. On October 14, while Anderson was seeing Dr. S. for treatment of his back injury, Dr. S. discussed the drug screen results with Anderson. Anderson admitted that he was taking several prescription medications that he had not previously revealed for panic disorder, depression, and severe headaches. In accordance with the urinalysis consent form that Anderson had signed, the next day Dr. S. informed Anderson's employers of the drug screen results and of Anderson's pre-

scription medications. At Anderson's employers' request, Dr. S. wrote two letters to them about Anderson's injury and drug screen results. A short time later, when being contacted by Anderson's employers to obtain Anderson's consent forms, Dr. S. learned that Anderson had been fired.

Anderson sued his employers in March 1994 for wrongful termination, invasion of privacy, and intentional infliction of emotional distress. In interrogatory answers dated January 30, 1995, the employers designated Dr. S. as one of their testifying experts.

In a letter dated March 7, 1995, Anderson sent Dr. S. a healthcare liability claim notice letter in accordance with article 4590i, section 1.03(a)(4). *See* TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.03(a)(4) (Vernon Pamph.1997). After receiving the notice letter, Dr. S. forwarded it to Texas Medical Liability Trust (TMLT), his professional liability insurer. TMLT asked Dr. S. by letter to prepare a narrative report of his care of Anderson in anticipation of a lawsuit being filed.[3] Dr. S.'s narrative report is an eight-page, single-spaced letter dated March 27, 1995 from Dr. S. to TMLT.

In an amended petition filed on March 30, 1995, Anderson added Dr. S. as a defendant in his suit against his employers, suing Dr. S. for the same claims made against his employers and for slander, fraud, negligence, DTPA violations, and conspiracy.

In the course of discovery, Anderson requested Dr. S. to produce "all factual observations (regardless of when the factual information was acquired), documents, ... reports, ... or other materials prepared by an expert or for an expert in anticipation of the expert's testimony at trial and deposition testimony." Anderson also requested "all ... reports ... prepared by an expert or for an expert in anticipation of the expert's testimony at trial and deposition testimony."

Dr. S. objected to these requests on June 7, 1995, asserting the attorney-client, party-

---

**3.** Dr. S.'s liability insurance policy required him, on receipt of notice of a claim, to provide notice of the claim to TMLT's claim department with "particulars sufficient to identify such event and such insured involved, and also reasonably ob-

tainable information with respect to the time, place, and circumstances thereof, and the name and address of each person injured and available witnesses."

communication, and investigative privileges, and stated that no determination on experts had been made yet. On August 29, 1996, Anderson settled with his former employers, leaving Dr. S. as the only defendant. Dr. S. designated himself as an expert in interrogatory answers on August 30, 1996. In very detailed and extensive interrogatory answers covering four single-spaced pages, Dr. S. stated the subject matter that he is expected to testify on, his mental impressions and opinions, and the facts known to him that relate to or form the basis of his mental impressions and opinions. In supplemental interrogatory answers dated October 7, 1996, Dr. S. reiterated that information in five single-spaced pages. Also, Dr. S. was deposed for three full days in 1996, and his deposition is almost 800 pages.

Anderson filed a motion to compel in September 1996. Dr. S.'s reply to the motion to compel included his affidavit to prove the applicable privileges. Dr. S. tendered various documents for *in camera* review by the trial court, including the letter from TMLT requesting the narrative report and the narrative report itself. With respect to the narrative report, Dr. S. stated in his affidavit:

> Upon receipt of notice of claim I contacted my insurance carrier, Texas Medical Liability Trust ("TMLT"). TMLT has a duty to defend me and has the authority to consult with my attorneys. Correspondence has been exchanged between myself and TMLT relating to the above-referenced matter [Anderson's suit against Dr. S.]. These communications were made in the context of the party communications privilege and the attorney/client privilege, I was seeking legal advice, expected these communications to remain confidential, and not be disclosed to third parties, and I have not waived my party communication privilege or my attorney/client privilege.
>
> . . . .
>
> I have reviewed the contents of the sealed envelope which is attached as Exhibit "A2" to this Affidavit. These documents are correspondence between my attorney and me, and which documents were not intended to be produced and have not been produced to third parties. These documents

are also correspondence between my legal representative, Texas Medical Liability Trust, and me and/or my attorney, and which documents were not intended to be produced and have not been produced to third parties. The documents sealed in the envelope labeled, Exhibit "A–2," Cause No. 348–152629–94; *Michael S. Anderson v. Benecorp I, Inc., NLS Industries, Inc., and [D.N.S., M.D.]*, Attorney–Client Privilege, Documents Submitted for *In Camera* Review, are true and correct copes [sic] of all documents that I have in my possession that I have received from my attorneys and/or legal representatives or sent to my attorneys and/or legal representatives.

> . . . .
>
> None of the documents contained in the attached exhibits form the basis of any of my expert medical opinions in this case.

A hearing was held on Anderson's motion to compel, and in an October 7, 1996 order, the trial court made the following ruling on the narrative report:

> However, despite [Dr. S.'s] affidavit to the contrary, there are some documents, which *on their face* show that they were prepared by him in anticipation of this trial and his testimony and which also form the basis of his mental impressions and opinions. Specifically, in envelope "A–2," pages 000–004 thru 000–011, there is a letter authored by [Dr. S.] to his insurer setting forth the facts as he understood and recalled them, his mental impressions and his opinions as a medical doctor concerning his treatment of Anderson, his duty with regard to statements made to him by his patient and any exceptions to the rule of confidentiality. Clearly, this falls within Rule 166b(2)(e)(1) as facts known to an expert or which relate to or form the basis of his impressions and opinions. While this is exempt from discovery under Rule 166b(3) while [Dr. S.] is a party and fact witness, once he becomes an expert he loses that portion of confidentiality that falls within material discoverable from or about any expert.

## STANDARD OF REVIEW

In deciding whether a writ of mandamus is appropriate, we recognize that mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker*, 827 S.W.2d at 839; *Johnson*, 700 S.W.2d at 917; *see also S.A.B. v. Schattman*, 838 S.W.2d 290, 292 (Tex.App.—Fort Worth 1992, orig. proceeding). A trial court also abuses its discretion when there is no evidence to support its ruling. *Loftin v. Martin*, 776 S.W.2d 145, 148 (Tex.1989); *Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex.1986).

With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the trial court could reasonably have reached only one decision and the trial court's decision is shown to be arbitrary and unreasonable. *Walker*, 827 S.W.2d at 839–40; *Johnson*, 700 S.W.2d at 917–18.

Our review is much less deferential with respect to a trial court's determination of the legal principles controlling its ruling, because a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *Id.; see Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex.1996) (trial court can erroneously apply law to facts even in unsettled area of law).

A writ of mandamus is the proper vehicle to attack an order granting or denying discovery. *See Tilton v. Moye*, 869 S.W.2d 955, 958 (Tex.1994). In making the determination of whether the trial court abused its discretion, we are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed. *See Chapa v. Garcia*, 848 S.W.2d 667, 668 (Tex.1992). The rule governing discovery of tangible items and documents does not require as a prerequisite to discovery that the items sought be admissible evidence; it is enough that the documents in question appear reasonably calculated to lead to the discovery of admissible evidence. *See* TEX. R.CIV.P. 166b(2)(a). However, this broad grant is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *General Motors Corp. v. Lawrence*, 651 S.W.2d 732, 734 (Tex.1983).

Finally, mandamus will issue only where there is no adequate remedy at law, such as a normal appeal. *Walker*, 827 S.W.2d at 840. Appellate courts will not intervene to control incidental trial court rulings when an adequate remedy by appeal exists. *Id.* An appellate remedy is not inadequate merely because it might involve more expense or delay than obtaining a writ of mandamus. *Id.* at 842. A party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. *Id.* at 843.

## DISCUSSION

The party-communications privilege is found in Texas Rule of Civil Procedure 166b(3)(d):

d. *Party Communications.* Communications between agents or representatives or the employees of a party to the action or communications between a party and that party's agents, representatives or employees, when made subsequent to the occurrence or transaction upon which the suit is based and in connection with the prosecution, investigation or defense of the particular suit, or in anticipation of the prosecution or defense of the claims made a part of the pending litigation. *This exemption does not include communications prepared by or for experts that are otherwise discoverable....*

TEX.R.CIV.P. 166b(3)(d) (emphasis added).

By its own terms, the party-communication privilege thus exempts "communications pre-

pared by or for experts that are otherwise discoverable." Discovery relating to experts is controlled by Texas Rule of Civil Procedure 166b(2)(e):

> e. *Experts and Reports of Experts.* Discovery of the facts known, mental impressions and opinions of experts, otherwise discoverable because the information is relevant to the subject matter in the pending action but which were acquired or developed in anticipation of litigation and the discovery of the identity of experts from whom the information may be learned may be obtained only as follows:
>
> (1) In General. A party may obtain discovery of the identity and location (name, address and telephone number) of an expert who may be called as an expert witness, the subject matter on which the witness is expected to testify, the mental impressions and opinions held by the expert and the facts known to the expert (regardless of when the factual information was acquired) which relate to or form the basis of the mental impressions and opinions held by the expert....
>
> (2) Reports. A party may also obtain discovery of documents and tangible things including all tangible reports, physical models, compilations of data and other material prepared by an expert or for an expert in anticipation of the expert's trial and deposition testimony....

Tex.R.Civ.P. 166b(2)(e)(1)–(2).

Apparently only one other Texas court has addressed the interplay between rules 166b(2)(e) and 166b(3). In *Aetna Cas. & Sur. Co. v. Blackmon,* 810 S.W.2d 438 (Tex. App.—Corpus Christi 1991, orig. proceeding), a bad faith case, Aetna had designated one of its own employees as a testifying expert. When the plaintiffs noticed the employee's deposition along with a subpoena duces tecum requesting that the employee bring all documents related to the suit, Aetna objected, asserting the attorney-client, work product, and party-communications privileges, and filed a motion for protection. Aetna segregated the documents by privilege and tendered them to the trial court for *in*

*camera* review, along with the employee's affidavit asserting the relevant privileges and claiming generally that none of the documents were prepared by him or for him in anticipation of his testimony. The trial court, without reviewing the tendered documents, agreed with the plaintiffs that Aetna had waived the asserted privileges by designating the employee as an expert.

In the mandamus proceeding that followed, the court of appeals stated that waiver only applied to the specific documents that the expert "relied upon as the basis for his testimony":

> In the present case, we believe that it is beyond question that the designation of Fernandez as an expert witness on Aetna's claims handling procedure waived any privilege that Aetna might assert to the specific matters that Fernandez *relied upon as the basis for his testimony.*

*Id.* at 440 (emphasis added). Along with this limitation, the court also refused to hold that an expert's designation automatically waives all privileges:

> In addition, the trial court was apparently of the opinion that any documents now in Fernandez' possession are discoverable as a result of his designation as an expert witness. We are unwilling at this time to hold that the designation of a person as an expert witness automatically waives all such privileges.

*Id.* Despite these limitations, the court nevertheless denied mandamus relief because Aetna failed to segregate by subject matter which documents the expert did and did not rely on as forming the basis for his testimony. *Id.*

 We agree with the Corpus Christi court that the designation of a party as an expert witness does not automatically waive the party-communication privilege. We also agree that if a party-expert relies on a privileged document as the basis for that expert's testimony, the privilege is waived. But we disagree with the Corpus Christi court's statement that "an apparent conflict" exists within rule 166b. *See id.* As noted above, the party-communication privilege, rule 166b(3)(d), anticipates the situation of a

party-expert and the existence of party communications: the privilege "does not include communications prepared by or for experts that are otherwise discoverable." TEX. R.CIV.P. 166b(3)(d). The operative test, therefore, for determining whether an expert's party communication is discoverable is whether it is "otherwise discoverable" under rule 166b(2)(e).

Under rule 166b(2)(e)(1), a party may discover an expert's mental impressions and opinions and the facts known to an expert, regardless of when the factual information was acquired, but only if the facts "relate to or form the basis of the mental impressions and opinions held by the expert." TEX. R.CIV.P. 166b(2)(e)(1). Under rule 166b(2)(e)(2), a party may discover a report prepared by an expert, but the report must have been prepared "in anticipation of the expert's trial and deposition testimony." TEX.R.CIV.P. 166b(2)(e)(2).

 We now turn to Dr. S.'s narrative report, the trial court's ruling on it, and Anderson's arguments. The trial court ruled, and we hold as well, that the narrative report is a privileged party communication.[4] In deciding that the narrative report is discoverable, the trial court ruled that the narrative report, on its face, shows that it was prepared by Dr. S. "in anticipation of this trial and his testimony" and "also form[s] the basis of his mental impressions and opinions." The trial court expressly ruled that the narrative report was discoverable under rule 166b(2)(e)(1) "as facts known to an expert or which relate to or form the basis of his impressions and opinions"; the trial court impliedly ruled that it was discoverable under rule 166b(2)(e)(2) by using the phrase "anticipation of this trial and his testimony." Anderson argues that the narrative report is

discoverable under both rule 166b(2)(e)(1) and rule 166b(2)(e)(2), while Dr. S. argues that only rule 166b(2)(e)(2) applies.

Applying a plain reading of rule 166b(2)(e) to the facts of this case, we conclude that only rule 166b(2)(e)(2) applies. Rule 166b(2)(e)(1) generally describes what information is discoverable from an expert—identity and location, subject matter, mental impressions and opinions, and the facts known to the expert. Rule 166b(2)(e)(2), on the other hand, is much more specific and expressly covers tangible materials, providing for "discovery of documents and tangible things including all tangible reports...." TEX.R.CIV.P. 166b(2)(e)(2). Thus, while rule 166b(2)(e)(2) specifically provides for discovery of an expert's tangible materials, rule 166b(2)(e)(1) appears to apply to information of an intangible nature.

 A standard rule of construction is that a specific rule controls over a general rule. *See Hammond v. City of Dallas,* 712 S.W.2d 496, 498 (Tex.1986); *Bexar County v. North East ISD,* 802 S.W.2d 854, 858 (Tex. App.—San Antonio 1990, writ denied). Thus, we hold that only rule 166b(2)(e)(2) applies to determine the discoverability of the narrative report because it is unquestionably a tangible report prepared by an expert. Therefore, the trial court abused its discretion by ruling that the narrative report was discoverable under rule 166b(2)(e)(1).[5] Were we to apply rule 166b(2)(e)(1) and its broader scope of discovery to the narrative report, the result would be a fishing expedition for all of a party-expert's privileged communications. In every case with a party-expert, virtually every attorney-client and party communication that touches even remotely on the facts of a case would be discoverable, practically resulting in an automatic waiver of all privi-

---

4. TMLT's letter to Dr. S. requesting preparation of the narrative report states: "This letter, your Narrative Report, as well as all other correspondence between us, is in preparation of your defense in the event that a lawsuit is filed."

5. Even if the narrative report were discoverable under rule 166b(2)(e)(1) as facts or a document relied on by Dr. S. or that relate to or form the basis of Dr. S.'s expert opinions, there was no evidence that the narrative report forms the basis of Dr. S.'s expert opinions or that he relied on it.

*See Blackmon,* 810 S.W.2d at 440 (party-communication privilege waived only for documents that expert relied on). In fact, the only evidence on this issue before the trial court—Dr. S.'s affidavit testimony—is directly to the contrary. Thus, in this respect, the trial court's ruling that the narrative report relates to or forms the basis of Dr. S.'s expert opinions is an abuse of discretion because there was no evidence to support such a ruling. *See Loftin,* 776 S.W.2d at 148.

leges in every case with a party-expert. Such a result would not only emasculate privileges, it would also violate the prohibition against fishing expeditions in discovery. *See Loftin,* 776 S.W.2d at 148. Moreover, that result would have a chilling effect on the attorney-client relationship [6] and the insurer-insured relationship.[7]

We next address whether the narrative report is discoverable under rule 166b(2)(e)(2). Under that rule, a report is discoverable if it was "prepared by an expert or for an expert in anticipation of the expert's trial and deposition testimony." TEX. R.CIV.P. 166b(2)(e)(2). The only evidence before the trial court on this issue is the narrative report itself, the request from TMLT to Dr. S. to prepare the narrative report, and Dr. S.'s affidavit testimony that the narrative report does not form the basis of his expert medical opinions in this case.

The narrative report, whose preparation was requested by Dr. S.'s insurer before Dr. S. was sued, is on its face a report unquestionably prepared in "anticipation of litigation." [8] Additionally, by already holding that the narrative report is a party communication, we necessarily have held that it was prepared "in anticipation of the ... defense of the claims made a part of the pending litigation." TEX.R.CIV.P. 166b(3)(d).

Anderson, assuming that a report prepared in "anticipation of litigation" is equivalent to a report prepared in "anticipation of testimony," argues that it is inconsistent for Dr. S. to claim that the narrative report was

a party communication prepared in "anticipation of litigation" yet claim that it was not prepared in "anticipation of his trial testimony." [9] An obvious distinction exists, however, between a report prepared by a prospective defendant "in anticipation of litigation" and a report "prepared by an expert ... in anticipation of the expert's trial and deposition testimony." The narrative report at issue is quite standard in professional liability cases such as this one. The purpose for the preparation of such a narrative report and the capacity in which it is prepared are quite distinct from the purpose of an expert's report and the capacity in which it is prepared.

And contrary to the trial court's conclusion, the narrative report does not on its face show that it was prepared in anticipation of Dr. S.'s testimony; Dr. S. had not even been sued when he prepared the narrative report.[10] How the trial court gleaned its conclusion is not explained. Instead, as we have held, the only decision the trial court could reasonably have reached [11] is that the narrative report shows on its face that it was prepared "in anticipation of the ... defense of the claims made a part of the pending litigation." TEX.R.CIV.P. 166b(3)(d). Also, the trial court's ruling is an abuse of discretion because there is no evidence that the narrative report was prepared in anticipation of Dr. S.'s testimony as his own expert. *See Loftin,* 776 S.W.2d at 148.

In conclusion, the trial court abused its discretion in ruling that the privileged narrative report is discoverable under rule 166b(2)(e)(2). The narrative report was

---

6. A lawyer owes a duty to a client to keep the client "reasonably informed about the status of a matter" and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." TEX. DISCIPLINARY R. PROF. CONDUCT 1.03 (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Pamph.1997) (STATE BAR RULES art. X, § 9).

7. See note 3.

8. See note 4.

9. We are not aware of any Texas case that holds that such a narrative report is discoverable as an expert report prepared "in anticipation of the expert's trial and deposition testimony."

10. Anderson also claims that the narrative report was prepared in anticipation of Dr. S.'s testimony as an expert because Dr. S. had been designated by Anderson's former employers as an expert at the time he prepared the narrative report. The parties dispute whether Dr. S. knew he had been designated as an expert by Anderson's former employers, but that dispute is irrelevant for two reasons. First, there is no evidence that the report was prepared in anticipation of Dr. S.'s testimony as an expert for Anderson's former employers. Second, and more importantly, as we have held, it is unquestionable that on its face the narrative report was not an expert's report prepared in anticipation of testimony in any respect.

11. *See Walker,* 827 S.W.2d at 840.

not prepared in anticipation of Dr. S.'s testimony as an expert. Dr. S. lacks an adequate remedy by appeal because an appellate court would not be able to cure the trial court's discovery error in ordering the production of a privileged document. *Walker*, 827 S.W.2d at 843. Accordingly, we conditionally grant Dr. S.'s petition for writ of mandamus. The writ will issue only if the judge of the 348th District Court[12] does not vacate Judge Schattman's October 7, 1996 order compelling production of the narrative report.

12. Judge Schattman has resigned and is no longer the judge of the 348th District Court. Accordingly, only his successor, the Honorable Dana Womack, can comply with our ruling.