In re CHRISTUS SPOHN HOSPITAL KLEBERG, Christus Spohn Health System Corporation d/b/a Christus Spohn Hospital Kleberg, Relator.

No. 04–0914.

Supreme Court of Texas.

Argued Nov. 30, 2005.

Decided April 27, 2007.

F. Edward Barker, Stephen Jeffrey Chapman, Barker Leon Fancher & Matthys, L.L.P., and Deborah R. Sundermann, Corpus Christi, for Relator.

Geary Todd Taylor, John Michael Johanson and Chris M. Volf, Johanson & Fairless, LLP, Sugar Land, for Real Party In Interest.

Justice O'NEILL delivered the opinion of the Court.

■ In this medical malpractice mandamus proceeding, the defendant hospital seeks to recover privileged documents that were mistakenly provided to its designated testifying expert witness. We must decide whether Texas Rule of Civil Procedure 193.3(d), known as the "snap-back" provision, preserves the privilege over Rule 192.3(e)(6)'s mandate that all documents provided to a testifying expert are discoverable. We hold that the inadvertent nature of the production in this case preserved the privilege under Rule 193.3(d) and entitled the hospital to recover the documents upon realizing its mistake, provided the hospital's designated expert does not testify at trial. The hospital has not

attempted to name another testifying expert, instead indicating an intent to rely upon the expert to whom the documents were disclosed. So long as the hospital stands upon its testifying expert designation, Rule 192's plain language and purpose and the policy considerations that surrounded its amendment compel the conclusion that the documents may not be snapped back. Accordingly, we deny the hospital's petition for writ of mandamus without prejudice to any right the hospital might have to designate another testifying expert and recover the privileged documents.

## I. Background

When Mona Palmer notified Christus Spohn Hospital Kleberg of her intent to file a health care liability claim arising out of her daughter Brandi Lee Palmer's death, the Hospital's internal investigator, Sandra Northcutt, conducted an investigation. That investigation generated a number of documents, labeled "CONFIDENTIAL COMMUNICATION PREPARED IN ANTICIPATION OF LITIGATION," which form the basis of this mandamus action. The Northcutt documents include Northcutt's memoranda summarizing her interviews with Hospital employees and her correspondence to and from Hospital counsel. A paralegal newly employed by the Hospital's counsel sent the Northcutt documents to the Hospital's only expert witness on standard-of-care issues, Nurse Kendra Menzies. According to the Hospital's counsel, the paralegal had recently moved to Texas from California, where she understood that all materials forwarded to an expert witness remained confidential. She assumed the same rule applied in Texas.

Menzies' expert report on Brandi Lee Palmer listed the documents she reviewed in forming her opinion; the Northcutt documents do not appear on that list. Plaintiff's counsel sought to depose Menzies, and issued a subpoena duces tecum requesting all documents furnished to and reviewed by Menzies in connection with her consultation in the lawsuit. Among the materials Menzies brought to the deposition were the Northcutt documents. This was the first time that the Hospital's and Palmer's counsel learned the privileged documents had been forwarded to Menzies. When questioned about the documents that had been transmitted to her, Menzies testified, "I didn't read every bit. But, yes, I glanced through everything in the box."

■ The Hospital filed an "Objection, Assertion of Privilege, and Motion to Return Privileged Documents" pursuant to Rule 193.3(d) of the Texas Rules of Civil Procedure, known as the "snapback" provision, seeking to recover the documents mistakenly produced to Menzies. At the hearing on this issue, Menzies testified by affidavit that she did not read the documents but rather "glanced" at them "merely to identify what they were," and upon determining that they were not relevant to her needs, "tossed them back in the box." The trial court overruled the Hospital's claim of privilege, stating it was "unclear that [Menzies] did not see certain specified documents." The court of appeals denied the Hospital's request for mandamus relief. We granted the Hospital's request for mandamus review to consider the application of Rule 193.3(d)'s snap-back provision to the Northcutt documents. Mandamus is appropriate if we conclude that the documents are in fact privileged and have been improperly ordered disclosed by the trial court. *See In re Bass,* 113 S.W.3d 735, 738 (Tex.2003).

## II. Discussion

### A. The Parties' Arguments

The Hospital claims the Northcutt documents were created or generated in

connection with the Hospital's internal investigation conducted in anticipation of litigation; therefore, the work-product privilege shields them from discovery. See TEX.R. CIV. P. 192.5(a), (b).[1] According to the Hospital, the privilege was not lost when the documents were transmitted to Menzies because waiver can only occur when privileged documents are voluntarily and knowingly disclosed, not when disclosure is inadvertent. The Hospital claims this principle is embodied in Rule 193.3(d)'s snapback provision, which mandates the return of privileged documents that have been inadvertently produced. Because it properly invoked Rule 193.3(d)'s snap-back provision, the Hospital argues, the trial court erred in determining that the privilege was waived. The Hospital further contends that Rule 192.3(e)(6), which mandates disclosure of all documents provided to a testifying expert, is not implicated because the Northcutt documents were not "prepared by or for the expert," and even if they were, Menzies did not read them. TEX.R. CIV. P. 192.3(c). Under these circumstances, the Hospital claims, the snap-back rule that protects the work-product privilege against inadvertent disclosure prevails.

For purposes of this appeal, Palmer does not dispute the privileged nature of the documents, nor does she challenge the Hospital's assertion that it complied with the snap-back procedures that Rule 193.3(d) requires for the return of inadvertently produced documents. Rather, Palmer contends Rule 193.3(d)'s snap-back provision does not apply to information that Rule 192.3 makes discoverable once it is provided to a testifying expert. Palmer further challenges the Hospital's statement that Menzies did not "read" the inadvertently transmitted documents, arguing

a fact issue exists regarding the extent of her review. In any event, Palmer contends, whether or not Menzies actually relied upon the documents in forming her opinion is not dispositive, because implicit in Rule 192.3's disclosure requirement is the notion that documents an expert chooses to regard and those she chooses to disregard in forming an opinion are both relevant and necessary for effective cross-examination.

■ We begin by examining the discovery rules in dispute, applying the same rules of construction that govern the interpretation of statutes. *See BASF Fina Petrochemicals Ltd. v. H.B. Zachry*, 168 S.W.3d 867, 871 (Tex.App.-Houston [1st Dist.] 2004, pet. denied); *see also In re Emeritus Corp.*, 179 S.W.3d 112, 114 (Tex. App.-San Antonio 2005, orig. proceeding) (holding that a rule of procedure is subject to the same rules of construction as statutes). When a rule of procedure is clear and unambiguous, we construe the rule's language according to its plain or literal meaning. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002).

### B. Discovery from Testifying Experts

■ Texas Rule of Civil Procedure 192.3(e), which defines the scope of permissible discovery from experts, provides in pertinent part as follows:

A party may discover the following information regarding a testifying expert ...:

\* \* \*

(3) the facts known by the expert that relate to or form the basis of the expert's mental impressions and opinions formed or made in connection with the case in which the discovery is

---

**1.** Because the Hospital does not assert attorney-client privilege with regard to the documents, we apply our analysis only to the work-product privilege.

sought, regardless of when and how the factual information was acquired; (4) the expert's mental impressions and opinions formed or made in connection with the case in which discovery is sought, and any methods used to derive them;

(5) any bias of the witness;

(6) *all documents*, tangible things, reports, models, or data compilations *that have been provided to, reviewed by, or prepared by or for the expert in anticipation of a testifying expert's testimony*; . . . .

TEX.R. CIV. P. 192.3(e) (emphasis added). We must first decide whether this rule applies to the Northcutt documents; if it does not, the documents retain their privileged nature and may be recovered pursuant to Rule 193.3(d)'s snap-back feature.

Rule 192.3(e)(6) was promulgated in 1999 to replace former Rule 166b, which permitted discovery of only those "documents . . . prepared by an expert or for an expert in anticipation of the expert's trial and deposition testimony." TEX.R. CIV. P. 166b(2)(e)(2) (repealed). Under this former rule, privileged work product lost its protected status if the material provided to the expert was, in fact, relied upon by the expert as the basis for his or her testimony. *See D.N.S. v. Schattman*, 937 S.W.2d 151, 156 (Tex.App.-Fort Worth 1997, orig. proceeding) (noting that privilege is waived when an expert relies on a privileged document as the basis for the expert's opinion); *Aetna Cas. & Sur. Co. v. Blackmon*, 810 S.W.2d 438, 440 (Tex.App.-Corpus Christi 1991, orig. proceeding) (holding that an expert witness's possession of documents did not automatically waive attorney-client and work-product privileges). Thus, under the pre-amendment rule, if an expert did not rely on a privileged document, it was not discoverable.

To avoid the discovery disputes that frequently arose over what material an expert may or may not have relied upon, the rule was amended in 1999 to include more expansive language. In addition to documents "prepared by or for the expert," the rule now mandates discovery of documents "that have been provided to, [or] reviewed by" a testifying expert. TEX.R. CIV. P. 192.3(e)(6). The Hospital's argument that the Northcutt documents were prepared by or for the Hospital rather than by or for the expert, and that Menzies did not read them in any event, erroneously ignores the rule's disjunctive language. Whether or not the documents were actually "read" by or prepared for Menzies, they were clearly "provided to" the Hospital's testifying expert and thus fall within Rule 192.3(e)(6)'s plain language.

■ It is true, as the Hospital claims and Palmer does not dispute, that the Northcutt documents constitute work product under Rule 192.5, and that work product is carefully protected from discovery under our rules. TEX.R. CIV. P. 192.5(a)(1), (2). However, Rule 192.5(c)(1) specifically states that work product loses its protected status when it is provided to a testifying expert:

(c) Even if made or prepared in anticipation of litigation or for trial, the following is not work product protected from discovery:

(1) information discoverable under Rule 192.3 concerning experts. . . .

TEX.R. CIV. P. 192.5(c)(1). Because the Northcutt documents were provided to the Hospital's testifying expert, the work-product privilege does not protect them unless the snap-back provision requires their return.

### C. The Snap–Back Provision

■ The snap-back provision was designed to protect the inadvertent disclo-

sure of privileged material in order to reduce the cost and risk involved in document production. TEX.R. CIV. P. 193 cmt. 4. The snap-back provision states that:

> A party who produces material or information without intending to waive a claim of privilege does not waive that claim under these rules or the Rules of Evidence if—within ten days or a shorter time ordered by the court, after the producing party actually discovers that such production was made—the producing party amends the response, identifying the material or information produced and stating the privilege asserted.

TEX.R. CIV. P. 193.3(d). The rule is focused on the intent to waive the privilege, not the intent to produce the material or information. *Id.* at cmt. 4.

The snap-back provision has typically been applied when a party inadvertently produces privileged documents to an opposing party. *See Warrantech Corp. v. Computer Adapters Servs.,* 134 S.W.3d 516, 525 (Tex.App.-Forth Worth 2004, no pet.) (holding that inadvertent production of privileged letter to opposing counsel did not waive the privilege under Rule 193.3(d)); *see also In re Parnham,* 2006 Tex.App. LEXIS 8252, 2006 WL 2690306, —— S.W.3d —— (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding) (applying snap-back rule when privileged documents were inadvertently provided to opposing counsel during discovery); *In re AEP Tex. Cent. Co.,* 128 S.W.3d 687, 693–94 (Tex. App.-San Antonio 2003, orig. proceeding) (holding that privileged legal memorandum inadvertently produced to the opposing side must be returned under the snap-back provision). In this case, however, the privileged material was produced by a party to its own testifying expert, invoking Rule 192.3(e)(6)'s overlapping directive that all materials provided to a testifying expert must be produced.

The tension between the snap-back provision that protects privileged documents and the expert-disclosure requirement presents an issue of first impression for our Court. In resolving this tension, we consider the respective interests the rules were designed to protect.

## D. Competing Interests

As we have said, the snap-back provision was designed to ensure that important privileges are not waived by mere inadvertence or mistake. Under the rule, a party who is less than diligent in screening documents before their production does not waive any privilege that might attach to them, presuming the party complies with Rule 193.3(d)'s procedures. TEX.R. CIV. P. 193.3(d) cmt. 4. By permitting the recovery of documents inadvertently produced to the opposing side, the rule preserves the important interests that the work-product doctrine was designed to protect, while at the same time visiting no harm upon the recipient for having to return documents it was not entitled to in the first place. Under Rule 193.3(d), the production of documents without the intent to waive a claim of privilege does not waive the claim.

The concepts of waiver and the intent required to effect it, however, do not appear in our testifying-expert disclosure rule. *See* TEX.R. CIV. P. 192.5(c)(1). Rule 192.5, which governs work product, speaks not in terms of waiver but rather states that documents and tangible things provided to a testifying expert under Rule 192.3, "even if made or prepared in anticipation of litigation or for trial ... *is not work product* protected from discovery." *Id.* (emphasis added). Thus, it appears from the rule's plain language that documents and tangible things provided to a testifying expert lose their work-product designation irrespective of the intent that accompanied

their production.[2] This makes sense in light of the important interests the expert-production requirement was designed to serve.

The expert witness occupies a unique place in our adversarial system of justice. *See E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 553 (Tex.1995). Considered to have "knowledge, skill, experience, training, or education," TEX.R. EVID. 702, that will "assist the trier of fact to understand the evidence or to determine a fact in issue," *id.,* the expert is generally held out to be, and is seen by the jury as, an objective authority figure more knowledgeable and credible than the typical lay witness. *See Robinson,* 923 S.W.2d at 553. For this reason, juries are prone to rely on experts to tell them how to decide complex issues without independently analyzing underlying factors. *See id.* As the Supreme Court has noted, " '[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.' " *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 631 (1991)).

Coupled with the expert's vast potential for influence is the fact that experts are generally unfettered by firsthand-knowledge requirements that constrain the ordinary witness. While lay witnesses may only testify regarding matters of which they have personal knowledge, TEX.R. EVID. 602, expert witnesses may testify about facts or data not personally perceived but "reviewed by, or made known" to them. TEX.R. EVID. 703. If the facts or data are of a type upon which experts in the field reasonably rely in forming opinions on the subject, the facts or data need not even be admissible in evidence. *Id.* Thus, in many instances, experts may rely on inadmissible hearsay, privileged communications, and other information that the ordinary witness may not. *See id.* Moreover, an expert may state an opinion on mixed questions of law and fact, such as whether certain conduct was negligent or proximately caused injury, that would be off limits to the ordinary witness. TEX.R. EVID. 704; *Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 365 (Tex.1987).

Armed with these advantages, the expert witness paints a powerful image on the litigation canvas. And it is typically the hiring attorney who selects the materials that will provide color and hue. Just as a purveyor of fine art must examine the medium used in order to distinguish masterpiece from fake, a jury must understand the pallet from which the expert paints to accurately assess the testimony's worth. Given the importance that expert testimony can assume, the jury should be aware of documents and tangible things provided to the expert that might have influenced the expert's opinion. In terms of determining what effect documents provided to an expert had in shaping the expert's mental impressions and opinions, the attorney's intent in producing the documents is irrelevant.

■■■ In light of these important policy concerns that underlie the expert-disclosure rule, we conclude that Rules 192.3(e)(6) and 192.5(c)(1) prevail over Rule 193.3(d)'s snap-back provision so long as the expert intends to testify at trial despite the inadvertent document production. That is, once privileged documents

---

**2.** We note that only documents are at issue in this case. No discovery request regarding whether the Hospital's counsel provided information to Menzies orally is before us, and we voice no opinion on whether such discovery would be permitted.

are disclosed to a testifying expert, and the party who designated the expert continues to rely upon that designation for trial, the documents may not be retrieved even if they were inadvertently produced. Of course, inadvertently produced material that could not by its nature have influenced the expert's opinion does not evoke the concerns the expert-disclosure rule was designed to prevent and the policy concerns underlying the rule's disclosure requirement would presumably never arise. In that event, there would be nothing to prevent the snap-back rule's application, although we note that a party seeking snap-back under such circumstances would bear a heavy burden in light of the disclosure rule's underlying purpose.

Our holding comports with federal case law interpreting the federal expert-disclosure rule, which is similar to our own.

### E. The Federal Rule

Before the federal expert-disclosure rule was amended in 1993, interpretation of the rule's disclosure requirement was generally mixed. Some courts favored a protective approach, precluding discovery unless the party seeking production could demonstrate a substantial need for the material in preparing the case and show that obtaining equivalent material elsewhere would be unduly hard. *See, e.g., Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 594–95 (3d Cir.1984) (holding opinion work product shared with expert witness not discoverable absent a showing of substantial need and undue hardship); *see also Hamel v.*

*Gen. Motors Corp.,* 128 F.R.D. 281, 284 (D.Kan.1989) (same); *Hydramar, Inc. v. Gen. Dynamics Corp.,* 119 F.R.D. 367, 370–71 (E.D.Pa.1988) (same); Michael E. Plunkett, *Comment, Discoverability of Attorney Work Product Reviewed by Expert Witnesses: Have the 1993 Revisions to the Federal Rules of Civil Procedure Changed Anything?,* 69 TEMP. L.REV. 451 (1996). Other courts favored broad discovery of work product provided to an expert. *See, e.g., William Penn Life Assurance Co. v. Brown Transfer & Storage Co.,* 141 F.R.D. 142, 143 (W.D.Mo.1990) (holding documents produced to a testifying expert not protected by work-product privilege); *Boring v. Keller,* 97 F.R.D. 404, 408 (D.Colo. 1983) (allowing discovery of all relevant materials shared with an expert witness).

Changes to the federal rules in 1993, like the amendment to our own rule thereafter, significantly increased the scope of permissible discovery from expert witnesses. Federal Rule of Civil Procedure 26(a)(2)(B) now provides for the disclosure of information "considered by" an expert in forming an opinion. FED. R. CIV. P. 26(a)(2)(B).[3] The Advisory Committee notes state that "[g]iven this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." FED.R.CIV.P. 26 (Advisory Committee Notes to 1993 Amendments). At

---

**3.** Our snap-back provision has no precise counterpart in the federal rules. *But see* FED. R.CIV.P. 26(b)(5)(B) (establishing procedures to be followed when allegedly privileged documents are produced) (effective Dec. 1, 2006). Despite the lack of any specific rule, however, some federal courts had allowed the recovery of privileged material that was inadvertently produced prior to the adoption of Rule

26(b)(5)(B) of the Federal Rules of Civil Procedure. *See, e.g., United States v. Zolin,* 809 F.2d 1411, 1417–19 (9th Cir.1987), *aff'd in part, vacated in part on other grounds,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *Mendenhall v. Barber–Greene Co.,* 531 F.Supp. 951, 954 (N.D.Ill.1982); *United States v. Rigas,* 281 F.Supp.2d 733, 737–38 (S.D.N.Y.2003).

least with respect to testifying experts, "[i]t appears that counsel should now expect that any written or tangible data provided to testifying experts will have to be disclosed." 8 CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2016.2, 2031.1 (1994).

Since the rule change, the overwhelming weight of federal authority interprets the rule to favor full disclosure, requiring the protections afforded attorney work product to yield to the interests that arise once privileged material is disclosed to the testifying expert.[4] In *TV–3 Inc. v. Royal Insurance Co. of America*, 194 F.R.D. 585 (S.D.Miss.2000), for example, the court drew a "bright line" in favor of discovery:

[O]nly the most naive of experienced lawyers or judges could fail to realize that in our present legal culture money plus the proper "marching orders" will get an "expert" witness who will undertake to prove most anything. The courts and the Fifth Circuit Court of Appeals in particular have begun to wrestle with ways to put some bridle on this legal phenomenon. *See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). It is most consis-

tent with this trend to say that when an attorney hires an expert both the expert's compensation and his "marching orders" can be discovered and the expert cross-examined thereon. If the lawyer's "marching orders" are reasonable and fair, the lawyer and his client have little to fear. If the orders are in the nature of telling the expert what he is being paid to conclude, appropriate discovery and cross-examination thereon should be the consequence. Such a ruling is most consistent with an effort to keep expert opinion testimony fair, reliable and within the bounds of reason.

*Id.* at 588 (citation omitted). While these cases did not involve inadvertent disclosure, the courts' policy analysis would apply irrespective of counsel's intent in producing the documents.

### F. Other States

State courts, too, have favored disclosure when documents are produced to a testifying expert. In a case factually analogous to the one before us, the Supreme Court of Missouri adopted a "bright line rule" requiring that "[a]ll material given to a testifying expert must, if requested, be disclosed." *Tracy v. Dandurand*, 30 S.W.3d 831, 836 (Mo.2000). There, Farm-

---

4. *See Reg'l Airport Auth. v. LFG, LLC*, 460 F.3d 697, 714 (6th Cir.2006) (concluding that a "majority of courts" favor a bright-line rule of full disclosure of documents produced to a testifying expert); *In re Pioneer Hi–Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed.Cir.2001) (stating "we are quite unable to perceive what interests would be served by permitting counsel to provide core work product to a testifying expert and then to deny discovery of such material to the opposing party"); *Lamonds v. Gen. Motors Corp.*, 180 F.R.D. 302, 305–06 (W.D.Va.1998) (holding documents produced to a testifying expert are not protected by the work-product privilege); *Musselman v. Phillips*, 176 F.R.D. 194, 202 (D.Md.1997) (stating "when an attorney furnishes work product—either factual or containing the attorney's im-

pressions—to [a testifying expert witness], an opposing party is entitled to discover such communication"); *B.C.F. Oil Refining v. Consol. Edison Co. of N.Y.*, 171 F.R.D. 57, 66 (S.D.N.Y.1997) (holding that all material a testifying expert considers, including counsel communications containing work product, must be disclosed); *Barna v. United States*, No. 95–C–6552, 1997 U.S. Dist. LEXIS 10853, at *5 (N.D.Ill. July 28, 1997) (reasoning that a jury is entitled to know about anything, including work product, that influenced an expert witness's opinion in order to assess credibility); *Karn v. Ingersoll-Rand*, 168 F.R.D. 633, 639 (N.D.Ind.1996) (holding that the Rule 26(a)(2)(B) disclosure requirements "trump" the work-product doctrine and favoring a bright line rule).

ers Insurance Co. inadvertently sent its expert witness confidential attorney reports and correspondence. Farmers moved for a protective order and/or a motion in limine requesting the trial court to order the documents returned and to prohibit their use during trial. Looking to federal authorities for guidance, the Missouri Supreme Court rejected Farmers' request. *Id.* at 835. Noting the strong protection Missouri law affords attorney-client privilege and the generally broad discretion trial courts have to order the return of inadvertently disclosed attorney-client communications, the Court nonetheless concluded the privilege was waived once the documents were produced to Farmers' testifying expert. *Id.* at 835–36. As for hardship on the attorney whose work product is inadvertently disclosed, the Court noted the attorney's option to withdraw the testifying expert's designation. *Id.* In that case, however, the expert had already been deposed and provided opposing counsel the disputed documents, prompting the Court to conclude it was too late to withdraw his designation. *Id.* at 836 (stating "[o]nce the expert's testimony is taken, the deposition is available for use by any party.... The bell has been rung and cannot be unrung.").

Similarly, in *Gall v. Jamison*, the Supreme Court of Colorado reviewed federal authorities and held that privileged material loses its protected status once disclosed to a testifying expert. 44 P.3d 233, 234 (Colo.2002). In that case, Gall's parents brought a medical malpractice claim against their daughter's doctor. *Id.* In response to a discovery request, Gall's counsel identified a letter sent to the designated expert that included an assessment of how the defendant's actions may have fallen below the standard of care and contained citations to relevant medical journals. *Id.* Gall asserted that the letter contained counsel's mental impressions

and opinions and thus was protected from discovery by the work-product privilege. *Id.* The disclosure in *Gall* was not inadvertent, but the policy considerations the Court considered are nearly identical to those presented here. The Court determined that, given the authority attributed to expert testimony, the jury is entitled to know what influenced the testimony and opposing counsel must be provided with that information to conduct an adequate cross-examination. *Id.* at 239–40; *see also,* Stephen D. Easton, *Ammunition for the Shoot–Out with the Hired Gun's Hired Gun: A Proposal for Full Expert Witness Disclosure,* 32 Ariz. St. L.J. 465 (2000). According to the Court, opposing counsel should have the opportunity to determine whether testimony is in fact the opinion of the expert or that of the attorney. *Gall,* 44 P.3d at 240; *see also* Easton, 32 Ariz. St. L.J. at 465. As for the "uneasy coexistence" or conflict between the expert-disclosure rule and the protections afforded attorney work product, the Court concluded that, ultimately, policy considerations required full disclosure. *Gall,* 44 P.3d at 235.

### G. The Northcutt Documents

Having determined that our expert-disclosure rules preclude the snap-back of documents inadvertently produced so long as the expert remains designated to testify at trial, we must decide whether the Hospital's claim that Menzies did not read the documents affects our analysis. According to the Hospital, Menzies did not sufficiently review the Northcutt documents such that Rule 192.3(e)(6) requires their disclosure. In order to waive the privilege, the Hospital claims, the documents must have been used in arriving at the expert's mental impressions and opinions.

As we have said, Rule 192.3(e)(6) requires the production of "all documents

... that have been *provided to,* reviewed by, *or* prepared by or for the expert. ..." TEX.R. CIV. P. 192.3(e)(6) (emphasis added). By disjunctively requiring the production of documents "provided to" the expert, our rule appears to be broader than the federal rule, which mandates disclosure of information that is "considered by the witness in forming the opinions." FED. R. CIV. P. 26(a)(2)(B). Thus, the Hospital's claim that Menzies did not sufficiently consider the documents to warrant their production is immaterial.

We note that an expert's choice not to utilize certain information does not necessarily mean that the information plays no part in forming the expert's opinion. Materials both accepted and rejected by an expert are indicative of the process by which the expert went about forming his or her opinion and may provide an effective basis for cross-examination. *See* Plunkett, 69 TEMP. L.REV. at 480 ("[A] litigant can most effectively cross-examine an opposing expert by confronting that expert with a relevant piece of evidence upon which he or she did not rely. Materials rejected by an expert, therefore, also form part of the basis of the expert's opinion."); *In re Air Crash Disaster at Stapleton Int'l Airport,* 720 F.Supp. 1442, 1444 (D.Colo.1988) (stating that "[i]n forming an opinion, an expert 'relies' upon material he finds unpersuasive as well as material supporting his ultimate position"); *Eliasen v. Hamilton,* 111 F.R.D. 396, 400 n. 5 (N.D.Ill.1986) (noting that documents an expert both relies upon and rejects are important for cross-examination). In *Tracy,* for example, the Supreme Court of Missouri rejected the notion that an expert must rely on a document for it to be subject to the disclosure rule, stating:

> [t]o hold otherwise would allow the expert witness or the party retaining the expert witness to select which documents to produce after the expert has

reviewed the documents in preparation for the expert's testimony. It is appropriate, at deposition or trial, to cross-examine an expert witness as to information provided to the expert that may contradict or weaken the bases for his or her opinion regardless of whether the expert relied upon or considered the information.

30 S.W.3d at 835 (citations omitted); *see also Karn,* 168 F.R.D. at 635 (stating that " '[c]onsidered,' which simply means 'to take into account,' clearly invokes a broader spectrum of thought than the phrase 'relied upon,' which requires dependence on the information"). Moreover, the fact that an expert chooses to ignore certain materials that have been provided may indicate a bias on the expert's part, or a proclivity toward a predetermined result. *See* Easton, 32 ARIZ. ST. L.J. at 563–64; *see also United States v. City of Torrance,* 163 F.R.D. 590, 594 (C.D.Cal.1995) (stating that "the documents considered but rejected by the expert trial witness could be even more important for cross-examination than those actually relied upon by him").

In this case, when questioned about her review of the Northcutt documents, Menzies testified: "I didn't read every bit. But, yes, I glanced through everything in the box." In her Affidavit attached to the Hospital's First Amended Objection, Menzies attested:

> Any other documents or materials contained in that box I glanced at merely to identify what they were and when I recognized that they were not something that I would need or want to read, I tossed them back into the box. I did not, under any circumstances, read or rely upon any of the following in the formulation of my opinions, nor in the preparation of my report. ...

Frankly, I did not even know that they were in the box until Mr. Todd Taylor, at my deposition, taken on August 16, 2004, took them from my box, showed them to me and asked me if I had read or relied upon any information contained therein. It is my recollection that I testified as testifying here, that I did not.

After considering Menzies' testimony, the trial court stated that its decision to deny the Hospital's objection was based not only on delivery of the documents to Menzies, but also on her testimony "that she reviewed and glanced at some of the documents-at the documents in the box." Based on her testimony, the trial court concluded it was "unclear that she did not see certain specified documents."

We agree that it is unclear from the record to what extent Menzies reviewed the Northcutt documents, although at the very least she "glanced" at them "to identify what they were." The plain language of Rule 192.3(e)(6) makes it immaterial whether she reviewed the documents; they were discoverable because they were provided to her. Under these circumstances, the trial court did not abuse its discretion in denying the request of the Hospital, which continued to rely upon Menzies as its testifying expert, for return of the documents.

■ We are sympathetic to the Hospital's concerns over losing valuable work-product protections when documents are produced to a testifying expert by mistake. But the producing party in such a situation is not without a remedy. An attorney who discovers that privileged documents have been inadvertently provided to a testifying expert may presumably withdraw the expert's designation and name another. *See Tracy*, 30 S.W.3d at 835–36. Although such a course may entail additional expense and perhaps delay, these concerns

do not outweigh countervailing concerns that require full disclosure from an expert who will testify. If leave of court is necessary for an alternative designation—when, for example, the expert designation deadline has passed—courts should carefully weigh the alternatives available to prevent what may be akin to a death-penalty sanction for the party forced to trial without a necessary expert. The Hospital did not pursue such a course in this case, however, and we voice no opinion on the trial court's discretion in that regard.

Finally, the Hospital contends that, even if discoverable for purposes of deposing Menzies, the Northcutt documents should otherwise retain their privilege and not be used for other purposes or at trial. Since Menzies has already been questioned about the documents, the Hospital argues, their discovery should be confined to that context. Specifically, the Hospital seeks to quash Sandra Northcutt's deposition, which has been postponed pursuant to the parties' agreement pending the outcome of this mandamus proceeding. We decline to opine on the potential admissibility of the Northcutt documents at trial, as that issue is premature. And in light of Rule 192.5(c)'s provision that information discoverable under Rule 192.3 "is not work product protected from discovery," we cannot say that the trial court abused its discretion in denying the Hospital's motion to quash Sandra Northcutt's deposition.

## III. Conclusion

For the foregoing reasons, we deny the Hospital's petition for writ of mandamus.