**In re CERTAIN UNDERWRITERS AT LLOYD'S LONDON and Certain London Market Insurance Companies.**

No. 09–09–00085–CV.

Court of Appeals of Texas, Beaumont.

Submitted May 28, 2009.

Decided Aug. 27, 2009.

James R. Old, Jr., Kelli B. Smith, Germer Gertz LLP, Beaumont, J. Clifton Hall III, Kent E. Westmoreland, Karen K. Milhollin, Westmoreland Hall, P.C., Houston, for relator.

Kent M. Adams, Adams and Heald PC, Beaumont, Michael Choyke, Thomas C. Wright, Bradley W. Snead, Wright Brown & Close, LLP, Houston, Edmund M. Kneisel, James J. Leonard, Kilpatrick Stockton, LLP, Atlanta, GA, for real parties in interest.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

PER CURIAM.

In this original proceeding, we must determine whether an agent's handwritten notes of conversations are privileged from discovery when the agent was retained on behalf of a party to a lawsuit and the notes reveal the content of conversations with the party's representatives and the party's attorneys. Relators are various insurance carriers ("Underwriters")[1] who underwrote a builder's risk insurance policy. The real parties in interest are the policyholders, Smith/Enron Cogeneration Limited Partnership and Raytheon–Ebasco Overseas Limited.

### I. Background

In response to a claim under a builders' risk policy, Underwriters hired an adjusting company, Steege Kingston, Inc. ("Steege Kingston"), to assist in its investigation. During the investigation, one of the Steege Kingston employees made handwritten notes of various conversations that he had with Underwriters' representatives or attorneys while assisting them in their duties that included evaluating whether the policy covered the policyholders' claim. After the policyholders filed suit to pursue the claim, the policyholders issued a subpoena for documents to Steege Kingston, and it responded by producing its file. Steege Kingston's file contained the handwritten notes of Brian Goetsch, a

1. The underwriters, who are the relators in this proceeding, include the following insurance companies: Certain Underwriters at Lloyds, Commercial Union Assurance Company (U.K.), Tokio Marine and Fire Insurance (U.K.) Ltd., Phoenix Assurance Public Limited Company (U.K.), Northern Assurance Company Ltd. M A/C (U.K.), Compagnie D' Assurances Maritimes Aeriennes et Terrestries (U.K.), Assurances Generales de France I.A.R.T. (U.K.), Terra Nova Insurance Company Ltd. (U.K.), Indemnity Marine Assurance Company Ltd. (U.K.), Ocean Marine Insurance Company Ltd. (U.K.), Assicurazioni Generali S.p.A. (U.K.), AXA Marine & Aviation Insurance (UK) Ltd., Skandia Marine Insurance Company (UK) Ltd., and Zurich Reinsurance (UK) Ltd.

Steege Kingston employee and its vice-president, about various conversations concerning the claim.

Several months later, Underwriters' trial attorney discovered that the file produced by Steege Kingston contained Goetsch's notes, and shortly afterwards, filed a motion asserting that the notes were privileged and requested that the court compel the policyholders to return Goetsch's notes. The underwriters also contend that Goetsch's notes were produced by Steege Kingston to the policyholders without their knowledge.

The trial court denied Underwriters' motion to return Goetsch's notes. Underwriters then filed a petition for writ of mandamus in this court. Because we find the trial court abused its discretion in denying Underwriters' motion, we conditionally grant the writ.

### A. The Policyholders' Claim

The policyholders' underlying insurance claim involves an alleged loss in value of an electrical generating facility located in Puerto Plata, a province of the Dominican Republic. During the facility's construction, the policyholders assert that some of the plant's components suffered "severe corrosion damage ... that occurred during start up, testing, and commissioning." In May 1998, Smith/Enron Cogeneration Limited Partnership, an insured under a builder's risk policy, sent a letter to a Dallas insurance agency to provide formal notice of the corrosion claim. In the letter, Smith/Enron advised the agency of its intent to pursue a claim against Underwriters to recover the repair costs for the damages, and Smith/Enron requested that the agency advise Underwriters of the policyholders' claim.

Prior to their handling of this specific corrosion damage claim, Underwriters had retained Kent Westmoreland, a lawyer in Houston, to act as their attorney in connection with other claims related to the facility's construction. In response to the notice of the corrosion damage claim, Westmoreland sent a letter dated July 1, 1999, to advise the policyholders' attorneys that Underwriters reserved the right to deny coverage on the claim. Subject to their reservation of rights, Westmoreland further advised that Underwriters would appoint an adjusting firm, Steege Kingston, to investigate and adjust the corrosion claim.

Both before and after the date Underwriters received the formal notice of the policyholders' claim, Westmoreland and Karen Milhollin, another attorney in Westmoreland's firm, discussed the corrosion claim and various issues related to it with Goetsch. This discovery dispute concerns Goetsch's handwritten notes, made of conversations about the corrosion claim during various meetings that involved Westmoreland, Milhollin, or other representatives of Underwriters, all of which occurred between August 1998 and June 2001.

### B. Westmoreland's Firm Asserts It Was Unaware Of Goetsch's Notes

After the policyholders filed suit, Underwriters authorized Westmoreland's law firm to act as their lead counsel. In the course of handling the lawsuit, J. Clifton Hall III, an attorney with Westmoreland's firm, requested that Steege Kingston provide him with a copy of its file. After receiving Steege Kingston's file, Hall reviewed it and, during discovery, produced various portions of the file that he considered to be unprotected by privilege. According to Hall's affidavit, which was provided in connection with Underwriters' motion to compel a return of the notes, Steege Kingston assured Hall that "they had given us everything that they had."

In that same affidavit, Hall stated that Goetsch's notes were not in the material that Steege Kingston gave him in response to his request for its file.

Ultimately, the policyholders' attorney caused a subpoena for the file to be served on Steege Kingston. After receiving notice that the subpoena had issued, Hall contacted Chuck Madeley, Steege Kingston's President, who told him that "the file to be produced was the exact same file that had previously been provided to [your] office." On October 11, 2006, Steege Kingston then produced its file to the court reporter, and on November 1, 2006, Hall received a copy. Neither Hall nor anyone with his firm reviewed the subpoenaed records until March 11, 2007, the day prior to the date that another of Steege Kingston's adjusters was to be deposed. Hall's affidavit indicates they believed the records that Hall had received earlier from Steege Kingston would be the same as those Steege Kingston had produced in response to the subpoena. On that evening of March 11, according to Hall, Milhollin discovered that Steege Kingston's complete file included Goetsch's handwritten notes.

### C. Efforts to Recover The Notes

After discovering the existence and the production of Goetsch's notes, Milhollin asserted Underwriters' privilege claim during the March 12 deposition. She also requested that the documents subject to privilege be returned. Policyholders refused that request and other subsequent requests by Underwriters asking them to return Goetsch's notes. In explanation of their refusal, the attorneys for the policyholders stated the notes were not subject to the "snap-back" provision and were not protected by any privileges.

On April 17, 2007, Underwriters filed a motion in the trial court seeking to compel the return of Goetsch's notes, citing the "snap-back" provision of Rule 193.3(d) of the Texas Rules of Civil Procedure. In September 2007, following a hearing in August 2007, the trial court appointed a special master who had served as both a trial judge and appellate justice, asked that the special master advise if the "snap-back" rule applied, and invited the special master to advise the court whether Goetsch's notes, or portions of them, were privileged. Subsequently, in March 2008, the special master recommended that the trial court grant Underwriters' motion, and advised the trial court that the documents were both privileged and inadvertently produced.

The policyholders filed objections to the special master's report, and after both sides filed briefs and supplemental responses, the trial court held another hearing to rule on Underwriters' motion. At that time, and without entering any findings or conclusions, the trial court denied Underwriters' motion. Afterwards, no party asked the court to enter findings and conclusions. Underwriters then filed a petition for a writ of mandamus seeking our review of the trial court's decision.

### II. Standard of Review

Mandamus relief exists only to correct a clear abuse of discretion for which the relators have no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004). The party that resisted discovery, but was nevertheless ordered to produce by the trial court, has the burden to establish both requirements. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex.2003) (orig. proceeding). Abuse of discretion occurs when a trial court orders discovery that exceeds the scope permitted by the rules of procedure. *Id.* at 152.

### III. Are the Documents Privileged?

The documents in issue consist of fifty-seven pages of handwritten notes dated between August 3, 1998 and June 27, 2001. The notes were made by Brian Goetsch, a Steege Kingston senior vice-president. Goetsch's notes during this period generally reflect what occurred during telephone conversations and meetings that involved, at various points, employees of Steege Kingston, Underwriters' attorneys (Hall and Milhollin), and several of Underwriters' claims representatives. According to Westmoreland's affidavit, the communications reflected by the notes were confidential, in furtherance of his legal representation, and contained his "legal advice, theories, opinions, conclusions, mental analyses, and evaluations regarding the claims."

We have reviewed the notes, which were produced to the trial court in camera, and believe that Westmoreland's affidavit is descriptive of the information reflected in Goetsch's notes. Goetsch's notes generally contain the type of information an attorney would gather in the investigation of an insurance claim of this type, reflect the issues that Westmoreland identified as being significant legal issues, and also indicate that Westmoreland became involved due to coverage issues.

■ In the trial court, and on appeal, Underwriters argues the work product privilege served as one reason that Goetsch's notes were not discoverable. The work product privilege is contained in Rule 192.5 and protects materials and mental impressions prepared "in anticipation of litigation" from discovery.[2] The

2. Rule 192.5 provides:

(a) Work Product Defined. Work product comprises:

(1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or

(2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.

(b) Protection of Work Product.

(1) Protection of Core Work Product–Attorney Mental Processes. Core work product—the work product of an attorney or an attorney's representative that contains the attorney's or the attorney's representative's mental impressions, opinions, conclusions, or legal theories—is not discoverable.

(2) Protection of Other Work Product. Any other work product is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means.

(3) Incidental Disclosure of Attorney Mental Processes. It is not a violation of subparagraph (1) if disclosure ordered pursuant to subparagraph (2) incidentally discloses by inference attorney mental processes otherwise protected under subparagraph (1).

(4) Limiting Disclosure of Mental Processes. If a court orders discovery of work product pursuant to subparagraph (2), the court must—insofar as possible—protect against disclosure of the mental impressions, opinions, conclusions, or legal theories not otherwise discoverable.

(c) Exceptions. Even if made or prepared in anticipation of litigation or for trial, the following is not work product protected from discovery:

(1) information discoverable under Rule 192.3 concerning experts, trial witnesses, witness statements, and contentions;

(2) trial exhibits ordered disclosed under Rule 166 or Rule 190.4;

(3) the name, address, and telephone number of any potential party or any person with knowledge of relevant facts;

(4) any photograph or electronic image of underlying facts (e.g., a photograph of the accident scene) or a photograph or electronic image of any sort that a party intends to offer into evidence; and

applicability of the work product privilege to Goetsch's notes, which is the substance of the dispute between the parties, centers on whether they were "made in anticipation of litigation." *See* TEX.R. CIV. P. 192.5(a)(1)-(2).

Policyholders argue that Goetsch's notes are not work product because he made them, in large part, before Underwriters issued its reservation-of-rights letter (July 1, 1999), and before Underwriters issued a denial of the claim (July 16, 2003). Consequently, the policyholders contend that Goetsch's notes do not qualify for protection from discovery as work product.

In support of the argument that the work product privilege does not extend to information created before the date of the insurer's denial, the policyholders rely on *In re Texas Farmers Insurance Exchange,* 990 S.W.2d 337, 341 (Tex.App.-Texarkana 1999, orig. proceeding). In *Farmers,* an attorney hired by a homeowner's insurer examined the homeowner under oath following a fire that occurred at the home. The attorney who conducted the examination under oath then testified at a subsequent hearing addressing Farmers' objections to producing the attorney's file. The attorney testified "that he was not told that Farmers anticipated litigation at the time he was hired, nor did he tell the Chappells that he was hired to take their EUOs in anticipation of litigation." *Id.* at 342.

█ The case before us differs significantly from *Farmers.* Here, the record reflects that Westmoreland specifically advised Underwriters to anticipate litigation. According to Westmoreland, at the time he became involved in handling this claim, one of the same policyholders was "involved in

(5) any work product created under circumstances within an exception to the attorney-client privilege in Rule 503(d) of the Rules of Evidence.

several lawsuits regarding the Puerto Plata plant, [ ] had tendered the same claims to several insurers, and [he] knew that [the policyholder] had threatened at least one other insurer with a lawsuit." Further, as early as May 1997, according to Westmoreland's affidavit, "Underwriters had already reserved their rights to pursue a declaratory judgment action in a letter [he] sent to [Smith/Enron]." Thus, Westmoreland, unlike the *Farmers'* attorney, provided evidence supporting Underwriters' assertion that litigation was anticipated on this claim.

The policyholders also rely on the testimony of David Cesario, a former Steege Kingston employee, to support their claim that Underwriters, at the time Goetsch's notes were made, had not yet anticipated litigation. Cesario's testified that he had no "knowledge of discussing with [Brian] Goetsch ... the anticipation of litigation over any of these claims." Additionally, the policyholders point to a statement in the affidavit accompanying the Steege Kingston response to the subpoena for documents, in which Charles Madeley, Steege Kingston's president, stated that the documents it produced were made by Steege Kingston in the ordinary course of its business. The policyholders contend that Cesario's and Madeley's statements are evidence sufficient to allow the trial court to reject Underwriters claim that it had anticipated litigation during the period covered by Goetsch's notes.

Cesario's deposition and Madeley's affidavit do not establish that either had personal knowledge of the date that Underwriters reasonably anticipated litigation. The fact that Cesario did not discuss the

(d) Privilege. For purposes of these rules, an assertion that material or information is work product is an assertion of privilege.

issue with Goetsch does not show that Goetsch did not anticipate litigation; it simply proves that the two did not discuss the issue. Madeley's affidavit does not address the date that Underwriters anticipated litigation. Absent their personal knowledge, the statements by Cesario and Madeley do not address the question in issue and do not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Tex.R. Evid. 401. We disagree that their statements are sufficient to explain the basis of the trial court's denial of Underwriters' motion.

In this record, Westmoreland's affidavit and the content of the notes are the only evidence we find that address the date on which Underwriters reasonably anticipated litigation. Westmoreland's affidavit states: "I advised Underwriters in August 1998 to anticipate litigation from Plaintiffs regarding their claims for coverage under the Builders Risk policy." As Goetsch's notes reflect, Westmoreland and other attorneys from his firm were directly involved in the majority of the conversations covered by the notes. While Goetsch's notes reflect at one point a desire to "avoid litigation," the notes also reflect that there were discussions about reserving rights and issuing denials. In the context of this record, the expressed desire "to avoid litigation" does not prove that Underwriters did not anticipate litigation, but instead supports Underwriters' argument that in August 1998 they held a subjective belief of a substantial chance of litigation. Moreover, Goetsch's notes do not reflect that during this period any settlement proposals were being considered, or that any funds were authorized by Underwriters to attempt a pre-suit settlement. There is also no evidence that involving an attorney for the purpose of evaluating insurance coverage in response to claims generally was a routine and ordinary practice by Underwriters.

The Texas Supreme Court has held: "Common sense dictates that a party may reasonably anticipate suit being filed, and conduct an investigation to prepare for the expected litigation, before the plaintiff manifests an intent to sue." *National Tank Co. v. Brotherton,* 851 S.W.2d 193, 204 (Tex.1993). Common sense, as well as a review of the record, reflects that Underwriters had a reasonable basis for its belief that there was a substantial chance of litigation during the time period covered by Goetsch's notes.

■ While abuse of discretion is the standard of review for mandamus proceedings, legal sufficiency, while not an independent ground of error, is a relevant factor in assessing whether the trial court abused its discretion. *In re Prudential,* 148 S.W.3d at 135–36; *see Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *see also West v. Solito,* 563 S.W.2d 240, 245 (Tex.1978). If the trial court concluded that Underwriters did not anticipate litigation before the date it issued its denial letter, we disagree that the evidence in this record is legally sufficient to support that conclusion. The only probative evidence in this record on the date Underwriters anticipated litigation supports Underwriters' claim that litigation was anticipated during the period involving Goetsch's notes.

### Does Any Exception To The Work Product Privilege Apply?

Next, we address whether any exception applies to any of the parts of Goetsch's notes. A large number of the pages that comprise Goetsch's notes reveal core work product, as they reflect the mental impressions, opinions, conclusions or legal theo-

ries of either Underwriters' representatives or their attorneys. *See* TEX.R. CIV. P. 192.5(b)(1). With respect to core work product, Rule 192.5(b) simply provides that core work product is "not discoverable." *Id.*

To the extent that portions of Goetsch's notes are work product because they were prepared in anticipation of litigation, but are not "core work product," those parts are subject to discovery "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means." TEX.R. CIV. P. 192.5(b)(2).

■ We are not persuaded that the substantial need and undue hardship exception allows the policyholders to retain Goetsch's notes. In the trial court, the policyholders made no argument that their substantial need permitted their discovery of Goetsch's notes. Further, the policyholders make no substantial-need argument in this proceeding. Also, the policyholders do not argue that the information in Goetsch's notes falls within any of the work-product exemptions contained by Rule 192.5(c).[3] *See* TEX.R. CIV. P. 192.5(c).

Having considered the evidence in the record, along with the arguments raised in the trial court and on appeal, we hold that Goetsch's notes are subject to the work-product privilege, and that no exception allows their discovery. We next consider whether Rule 193.3(d) applies.

### IV. The "Snap–Back" Provision

Policyholders argue that Rule 193.3(d) (known as the "snap-back" provision), by its terms, does not apply when a nonparty to the lawsuit produces the documents. *See* TEX.R. CIV. P. 193.3(d); *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 435 (Tex.2007) (orig. proceeding). Underwriters asserts that Rule 193.3(d) entitles them to have their documents returned. With respect to Goetsch's notes, Underwriters further contends they have not waived their right to assert their privileges.

Rule 193.3(d) provides:

> (d) *Privilege Not Waived by Production.* A party who produces material or information without intending to waive a claim of privilege does not waive that claim under these rules or the Rules of Evidence if—within ten days or a shorter time ordered by the court, after the producing party actually discovers that such production was made—the producing party amends the response, identifying the material or information produced and stating the privilege asserted. If the producing party thus amends the response to assert a privilege, the requesting party must promptly return the specified material or information and any copies pending any ruling by the court denying the privilege.

TEX.R. CIV. P. 193.3(d). Policyholders' argument is straightforward. According to them, Rule 193.3(d) by its express terms applies only when a "party" to the lawsuit has produced the documents in dispute; therefore, policyholders conclude that the

---

**3.** Underwriters did contend that Goetsch's notes were protected from discovery by the attorney-client privilege, but the policyholders responded by arguing that the attorney-client privilege does not apply for several reasons, including that Steege Kingston, and its employee, Goetsch, do not qualify as "representatives of the client." *See* TEX.R. EVID. 503(a)(2)(defining "representative of the client" for purposes of the attorney-client privilege). We expressly do not reach, nor do we resolve whether the attorney-client privilege applies in light of our holding that Goetsch's notes are privileged as work product. *See* TEX.R.APP. P. 47.1.

rule does not apply when a nonparty to the suit produced the documents.

Instead, the policyholders contend that Rule 511 of the Texas Rules of Evidence governs the resolution of waiver arguments that involve production by nonparties to the lawsuit. Rule 511 of the Texas Rules of Evidence provides, in pertinent part:

> A person upon whom these rules confer a privilege against disclosure waives the privilege if: (1) the person or a predecessor of the person while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged[.] . . . .

TEX.R. EVID. 511. In summary, the policyholders contend that by using the term "person," as opposed to the term "party," Rule 511 applies to nonparties.

## V. Rule 193.3(d)

### A. Analysis

Policyholders' argument restricts the meaning of the Rule 193.3(d)'s language, "party who produces," to encompass only the parties to the lawsuit. Underwriters, in reply, contend that the "snap-back" provision was intended to permit a remedy to the inadvertent production of records by parties or by nonparties. Because the rules do not expressly define the term "party who produces," it is not clear that Rule 193.3(d) is confined to reach only parties to a suit.

■ To determine the proper meaning of a rule of procedure, courts use the same rules of construction that are applied in construing statutes. *Christus*, 222 S.W.3d at 437. In resolving whether Rule 193.3(d) was intended to reach production by an entity that is not a party to the lawsuit, but is a party to the production request, we first consider how the rules treat the scope of the privilege by examining a related issue: who has standing to assert a privilege when the party with the privilege is not the party possessing the documents.

■ The parties holding rights to assert the work-product privilege are not always coextensive with the persons named as parties in a lawsuit. *See In re Bexar County Criminal Dist. Attorney's Office*, 224 S.W.3d 182, 184–5 (Tex.2007). Further, either the holder of the privilege or certain others on the holder's behalf may generally assert the privilege. *See In re Ford Motor Co.*, 211 S.W.3d 295, 301 (Tex.2006) (stating that "[u]nder Texas law, discovery privileges are waived by *voluntary* disclosure by the *holder* of the privilege"); *see also* TEX.R. EVID. 503(c) (recognizing that the lawyer-client privilege may be claimed by the client, or by the client's representative on behalf of the client); TEX.R. EVID. 504(a)(3) (stating that the husband-wife privilege may be claimed by the spouse or the spouse's representative); TEX.R. EVID. 505(c) (stating that the clergy-communications privilege may be asserted by the person or the person's guardian, or the member of the clergy to whom the communication was made "but only on behalf of the communicant"); TEX.R. EVID. 509(d) (stating that the physician-patient privilege may be claimed by the patient, the patient's representative, or the physician, who may claim it "only on behalf of the patient"); TEX.R. EVID. 510(c) (providing a similar provision for who may claim the privilege regarding mental-health information); TEX.R. EVID. 511 (providing for a waiver of a privilege if the holder voluntarily discloses or consents to the disclosure of privileged matters). As these rules demonstrate, the right to assert the existence of a privilege is not generally dependent upon physical possession of a document; instead, the privilege, and the right to assert it, relate to the

class of persons who would have information subject to the privilege.

 Because the law allows privileged information to be shared for certain purposes with specific others, privilege rules are necessarily designed to apply to persons other than the privilege's holder. Should the "snap-back" provision apply only to the parties to the suit, that interpretation would effectively negate the privilege holder's enforcement rights when nonparties to the suit produce privileged information. Thus, we conclude that an interpretation of Rule 193.3(d) to read "party who produces" as meaning "party to the lawsuit who produces" would allow, rather than discourage, efforts to obtain privileged information from nonparties.

It is clear that a person may be a party who produces information related to a lawsuit without necessarily also being a party to the suit, as nonparties can be subpoenaed to require their cooperation in a civil suit. TEX.R. CIV. P. 205.1–.3. By employing the term "party who produces," we do not perceive any intent by the drafters of Rule 193.3(d) to constrict the Rule's application solely to those that are named as parties in a suit.

Because the discovery rules often apply to reach information not within a party's physical possession, the party may often not have actual knowledge of the existence of information or documents in the possession of others but may be nevertheless obligated to gain knowledge of them. For instance, under the discovery rules, serving a request for production of documents on a party creates a duty on the party to "produce a document or tangible thing that is within the person's possession, custody, or control." TEX.R. CIV. P. 192.3(b). In turn, the terms "possession, custody, or control" are broadly defined to mean "that the person either has physical possession of the item or has a right to possession of

the item that is equal or superior to the person who has physical possession of the item." TEX.R. CIV. P. 192.7(b). Thus, in evaluating the scope of a given request to produce, the duty to produce is not always satisfied by producing the documents that are in the party's immediate physical possession. When examining the discovery rules that apply to those named as parties to the suit, the duty to satisfy document requests may often extend to documents in the possession of persons or entities that are not parties to the suit. *See* TEX.R. CIV. P. 192.7(b).

Consequently, in responding to the policyholders' request, Underwriters had a duty to obtain the Steege Kingston documents subject to its control and to follow Rule 193.3 in withholding documents from production on the grounds of privilege, if Steege Kingston had actually provided Goetsch's notes to Underwriters. *See* TEX.R. CIV. P. 192.7(b), 193.3(a). Thus, discovery under the Texas Rules of Procedure is often not narrowly confined to documents whose existence is known by the party, as illustrated here by Underwriters' assertion that it did not know of the existence of Goetsch's notes.

 Privileges like the work-product privilege itself also extend beyond documents physically in the party's possession, and may often extend to information in the possession of nonparties as well. Rule 192.5 defines the work-product privilege in terms of the material or mental impressions developed by the party or the party's representatives, and does not define the privilege in terms of who possesses the documents containing privileged information. *See* TEX.R. CIV. P. 192.5(a)(1). In summary, a party to a lawsuit has discovery privileges that may often extend beyond the documents and information in its actual physical possession. The drafters of the "snap-back" provision were un-

doubtedly aware of the broad reach of the work-product privilege to information as well as documents, as well as the broad reach of rules governing discovery from nonparties.

The rules governing discovery from nonparties incorporate by reference the "snap-back" provision. They do so through the provisions of Rule 205 and Rule 176.6. Generally, Rule 205 controls the methods of discovery from nonparties. *See* Tex.R. Civ. P. 205 (Discovery from Nonparties). With respect to a subpoena duces tecum served on a nonparty, Rule 205.3(d) provides: "The nonparty must respond to the notice and subpoena in accordance with Rule 176.6." Tex.R. Civ. P. 205.3(d). In turn, Rule 176.6(c), provides that in responding: "A person may withhold material or information claimed to be privileged but must comply with Rule 193.3." Thus, by virtue of Rule 205.3(d)'s reference to Rule 176.6(c), and Rule 176.6(c)'s reference to Rule 193.3, nonparties may also utilize the "snap-back" provision to remedy the inadvertent production of their own privileged documents. *See* Tex.R. Civ. P. 176.6(c), 193.3, 205.3(d).

It is also apparent that the promulgators of the current rules of discovery made a significant effort to change prior discovery procedures in order "to avoid waiver by a party when privileged materials or information **may** be at issue." *In re Lincoln Elec. Co.*, 91 S.W.3d 432, 436 (Tex.App.-Beaumont 2002) (orig. proceeding). Comment 4 to Rule 193.3, which applies to discovery filed after January 1, 1999, addresses Rule 193.3(d)'s purpose, and states:

4. Rule 193.3(d) is a new provision that allows a party to assert a claim of privilege to material or information produced inadvertently without intending to waive the privilege. The provision is commonly used in complex cases to re-

duce costs and risks in large document productions. The focus is on the intent to waive the privilege, not the intent to produce the material or information. A party who fails to diligently screen documents before producing them does not waive a claim of privilege. This rule is thus broader than Tex.R. Evid. 511 and overturns *Granada Corp. v. First Court of Appeals*, 844 S.W.2d 223 (Tex.1992), to the extent the two conflict. The ten-day period (which may be shortened by the court) allowed for an amended response does not run from the production of the material or information but from the party's first awareness of the mistake. To avoid complications at trial, a party may identify prior to trial the documents intended to be offered, thereby triggering the obligation to assert any overlooked privilege under this rule. A trial court may also order this procedure.

*See* Tex.R. Civ. P. 193.3, cmt. 4; 61 Tex. B.J. 1140, 1151, 1153 (1998). Thus comment 4 does not indicate an intent to limit subsection (d)'s application in circumstances similar to those involved here. Tex.R. Civ. P. 193.3, cmt. 4. In light of comment 4 (which expressly states an intent to overturn *Granada* ) and the application of Rule 193.3 to both parties and nonparties, it is clear to us that Rule 193.3(d) was intended to restrict the waiver doctrine in a variety of situations that might arise from inadvertent disclosures of privileged documents. *Compare Granada,* 844 S.W.2d at 226 *with* Rule 193.3, cmt. 4 *and* Rule 193.3(d).

 Moreover, comment 4 appears inconsistent with the policyholders' contention that the drafters of Rule 193.3(d) intended it to be interpreted narrowly so that it would remedy only inadvertent disclosures by a named party to the suit. Generally, under the rules of statutory

construction, which are used to construe rules of procedure, remedial statutes are construed by courts broadly. *See Christus*, 222 S.W.3d at 437; *Burch v. City of San Antonio*, 518 S.W.2d 540, 544 (Tex. 1975); *City of Mason v. W. Tex. Utils. Co.*, 150 Tex. 18, 237 S.W.2d 273, 280 (1951). Specifically, "[i]f a statute is curative or remedial in its nature, the rule is generally applied that it be given the most comprehensive and liberal construction possible." *City of Mason*, 237 S.W.2d at 280.

In support of its argument to limit the remedy provided by Rule 193.3(d) to the parties to the lawsuit, the policyholders rely on *In re Ortuno*, No. 14–08–00227–CV, 2008 WL 2339800, at *2, 2008 Tex. App. LEXIS 3396, at *5 (Tex.App.-Houston [14th Dist.] May 6, 2008, orig. proceeding) (mem. op.). In *Ortuno*, the Fourteenth Court of Appeals reasoned that Rule 193.3 could not be used to remedy the production of a patient's privileged medical record because the record had been produced by a nonparty to the suit, a hospital. *Id.*

We disagree with the conclusion reached in *Ortuno*, and we conclude that the term "party who produces," as used in Rule 193.3(d), was not intended to limit the right of a party to file objections to a nonparty's production of privileged documents. Our conclusion is based on the history of Rule 193.3(d), the broad reach of the rules of privilege to information possessed by parties and nonparties, the structure of the rules of discovery to allow discovery to reach information in the possession of both parties and nonparties, and the remedial purpose of Rule 193.3.

Consequently, Underwriters, as the holder of the privilege, had a right to rely on Rule 193.3(d) to protect them against the inadvertent waiver of their privileges. We hold that Underwriters can utilize Rule 193.3(d) as the procedural basis to obtain the return of Goetsch's notes. Therefore, to the extent the trial court relied on the policyholders' argument that Rule 193.3(d) did not apply, the trial court misapplied the law.

### B. Underwriters' Objections

The policyholders also argue that Rule 193.3(d) does not apply because it requires the party, within ten days of its actual discovery of the production, to amend its response, identify the material or information produced, and state the privilege asserted. TEX.R. CIV. P. 193.3(d). The policyholders contend that Underwriters did not file an amended response, and further contend that by waiting until March 12, 2007, to assert their privileges, they failed to comply with the Rule's window (ten days from actual knowledge) to timely file their objections.

Although Underwriters acknowledge receiving Steege Kingston's complete file in November 2006, Underwriters assert that they complied with the requirements of Rule 193.3(d) because they did not actually learn of the existence of the privileged documents until March 2007. On the day after Underwriters learned of the existence of Goetsch's notes, its attorneys requested that the notes be returned, and then again requested their return in a letter dated March 15, 2007. The policyholders contend that Underwriters' objections at the deposition and their subsequent letter are not sufficient to constitute an amendment to Steege Kingston's response to their subpoena.

To evaluate whether Underwriters' actions in objecting and filing a letter constitute an amendment within the meaning of Rule 193.3(d), we observe that Underwriters had standing to file objections to the subpoena the policyholders caused to be served on Steege Kingston. *See* TEX.R. CIV. P. 192.6(a) (authorizing any person

affected by the discovery to move for a protective order within the time permitted for discovery). It is undisputed that Underwriters did not file objections at that time.

■■■ The rules specific to discovery impose a general duty to file amended or supplemental responses to discovery "[i]f a party learns that the party's response to written discovery was incomplete or incorrect when made, or although complete and correct when made, is no longer complete and correct...." Tex.R. Civ. P. 193.5(a). Thus, Underwriters' objections and letter corrected their prior nonresponse by notifying the policyholders of their objections to Steege Kingston's production of privileged matters.

Here, the policyholders do not dispute that Underwriters objected to Steege Kingston's production of Goetsch's notes during the March 12 deposition, and then again in a letter dated March 15, 2007 addressed to the policyholders' attorney of record. We conclude that Underwriters' objections during the deposition and the letter that followed were sufficient to amend Underwriters' prior failure to object in response to Steege Kingston's being served with a subpoena to produce its file. If the trial court reasoned that Underwriters' objections did not constitute an amendment within the meaning of Rule 193.3(d), the trial court erred in its application of that rule. *See* Tex.R. Civ. P. 193.3(d).

### C. Were Underwriters' Objections Timely?

■■■ Next, we address whether Underwriters' response, which amended their prior non-response, occurred within ten days of their "actual discovery" of Steege Kingston's production of Goetsch's notes. *See* Tex.R. Civ. P. 193.3(d). Comment 4 to Rule 193.3(d) establishes that the Rule's

focus is on the intent to waive the privilege, not the intent to produce the material or information. *See* 61 Tex. B.J. at 1153. In our opinion, Rule 193.3(d)'s requirement of "actual discovery" focuses the inquiry on whether the party holding the privilege intended to waive it. By establishing a standard of actual knowledge, evidence that a party should have known privileged documents were produced is insufficient under Rule 193.3(d) to adequately support a trial court's implied finding that the waiver of a privilege occurred.

In determining the date that Underwriters actually became aware of the production of Goetsch's notes, all of the facts and circumstances are evaluated in order to determine their actual subjective state of mind. *See generally Louisiana–Pacific Corp. v. Andrade,* 19 S.W.3d 245, 248 (Tex. 1999); *General Motors Corp. v. Sanchez,* 997 S.W.2d 584, 596 (Tex.1999). Therefore, we examine all of the evidence in this record relevant to Underwriters' actual knowledge of the existence and production of Goetsch's notes.

■■■ In support of its motion, Underwriters filed several affidavits, including the affidavit of Hall, who was their attorney in charge of the litigation. *See* Tex.R. Civ. P. 8. Hall's affidavit stated that the documents Steege Kingston produced in response to the subpoena were provided to his office. However, his affidavit further stated that after his firm received the subpoenaed records, "No one in our office was instructed to, or did, review the copy of the Steege Kingston production at that time because Steege Kingston had advised us that it was the exact same production that was already in our possession." Hall then explained why, for various reasons, the documents Steege Kingston produced in response to the subpoena were not reviewed until March 11, 2007.

According to the policyholders, because "Underwriters had the production in their office for over four-and-a-half months[,]" the trial court could believe that Underwriters knew of Goetsch's notes earlier and could therefore reject Underwriters' claim that they only discovered Goetsch's notes in March. The policyholders' argument also relies on inferences from the answers under oath provided by Madeley, Steege Kingston's president, in response to their deposition on written questions for Steege Kingston's records. In the affidavit accompanying Steege Kingston's response to the subpoena, Madeley stated that he had previously produced "these records" to Hall, and explained that he had not been instructed to withhold any documents on privileged grounds. Thus, the policyholders argue that Madeley's affidavit, or Underwriters' undisputed possession of the privileged documents in November 2006, allowed the trial court to infer that Underwriters had actual knowledge of the existence and production of Goetsch's notes more than ten days before Underwriters lodged objections to the notes' production.

 While evidence that documents are sent creates an inference that the documents were reviewed around that time, that inference vanishes when opposing evidence is introduced to show that the document was not reviewed. *See generally Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex.1999) (presumption of receipt vanishes when proof is introduced that the document was not received); *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex.1987) (proof of non-receipt rebuts evidence that a docu-

ment was sent). Here, the evidence relied upon by the policyholders proves only that Underwriters should have known of the existence of the privileged documents at an earlier date than it actually knew of them; this evidence does not establish that Underwriters had actual knowledge before March 11 that Goetsch's notes existed or had been produced in discovery.

In our opinion, the only relevant evidence in the record establishes that Underwriters' knew on March 11, and not earlier, that Goetsch's notes were produced in discovery. Considering the entire record, we conclude that any presumption or inference arising in the absence of evidence was rebutted. In the absence of further evidence to create a fact issue on the date of actual discovery, we hold that Underwriters established that it complied with Rule 193.3(d)'s ten-day window, and we further hold that there is no legally sufficient evidence in the record proving otherwise. *See In re Prudential*, 148 S.W.3d at 135–36; *Buller*, 806 S.W.2d at 226; *West*, 563 S.W.2d at 245.

 In summary, we conclude the documents in issue were privileged, Rule 193.3(d) required the return of the documents, Underwriters properly requested their return, and the trial court abused its discretion in refusing to compel the policyholders to return Goetsch's notes. Accordingly, we conditionally grant mandamus relief and direct the trial judge to vacate his January 29, 2009, order and enter an order requiring the policyholders to promptly return the privileged documents and any copies.[4] With respect to the relief granted herein, we are confident

4. We note that Rule 193.3(d) contemplates the return of documents asserted to be privileged and produced inadvertently upon the objecting party filing an amended response, and we observe that the policyholders expressly refused to comply with that requirement. While the argument that Rule 193.3(d)

does not apply is pursued in good faith, the better practice is for parties to return documents asserted to be within the ambit of Rule 193.3(d) pending the ruling of the trial court, and we believe that policyholders should have done so here.

908

the trial court will comply, and the writ will issue only if the trial court fails to act promptly in accord with this opinion.

WRIT OF MANDAMUS CONDITIONALLY GRANTED.