In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-09-00085-CV


____________________



IN RE CERTAIN UNDERWRITERS AT LLOYD'S LONDON AND


CERTAIN LONDON MARKET INSURANCE COMPANIES






Original Proceeding






 OPINION


 In this original proceeding, we must determine whether an agent's handwritten notes
of conversations are privileged from discovery when the agent was retained on behalf of a
party to a lawsuit and the notes reveal the content of conversations with the party's
representatives and the party's attorneys. Relators are various insurance carriers
("Underwriters") (1) who underwrote a builder's risk insurance policy. The real parties in
interest are the policyholders, Smith/Enron Cogeneration Limited Partnership and Raytheon-Ebasco Overseas Limited.

I. Background


 In response to a claim under a builders' risk policy, Underwriters hired an adjusting
company, Steege Kingston, Inc. ("Steege Kingston"), to assist in its investigation. During
the investigation, one of the Steege Kingston employees made handwritten notes of various
conversations that he had with Underwriters' representatives or attorneys while assisting
them in their duties that included evaluating whether the policy covered the policyholders'
claim. After the policyholders filed suit to pursue the claim, the policyholders issued a
subpoena for documents to Steege Kingston, and it responded by producing its file. Steege
Kingston's file contained the handwritten notes of Brian Goetsch, a Steege Kingston
employee and its vice-president, about various conversations concerning the claim. 

 Several months later, Underwriters' trial attorney discovered that the file produced by
Steege Kingston contained Goetsch's notes, and shortly afterwards, filed a motion asserting
that the notes were privileged and requested that the court compel the policyholders to return
Goetsch's notes. The underwriters also contend that Goetsch's notes were produced by
Steege Kingston to the policyholders without their knowledge.

 The trial court denied Underwriters' motion to return Goetsch's notes. Underwriters
then filed a petition for writ of mandamus in this court. Because we find the trial court
abused its discretion in denying Underwriters' motion, we conditionally grant the writ. A. The Policyholders' Claim


 The policyholders' underlying insurance claim involves an alleged loss in value of an
electrical generating facility located in Puerto Plata, a province of the Dominican Republic.
During the facility's construction, the policyholders assert that some of the plant's
components suffered "severe corrosion damage . . . that occurred during start up, testing, and
commissioning." In May 1998, Smith/Enron Cogeneration Limited Partnership, an insured
under a builder's risk policy, sent a letter to a Dallas insurance agency to provide formal
notice of the corrosion claim. In the letter, Smith/Enron advised the agency of its intent to
pursue a claim against Underwriters to recover the repair costs for the damages, and
Smith/Enron requested that the agency advise Underwriters of the policyholders' claim. 

 Prior to their handling of this specific corrosion damage claim, Underwriters had
retained Kent Westmoreland, a lawyer in Houston, to act as their attorney in connection with 
other claims related to the facility's construction. In response to the notice of the corrosion
damage claim, Westmoreland sent a letter dated July 1, 1999, to advise the policyholders'
attorneys that Underwriters reserved the right to deny coverage on the claim. Subject to their
reservation of rights, Westmoreland further advised that Underwriters would appoint an
adjusting firm, Steege Kingston, to investigate and adjust the corrosion claim.

 Both before and after the date Underwriters received the formal notice of the
policyholders' claim, Westmoreland and Karen Milhollin, another attorney in
Westmoreland's firm, discussed the corrosion claim and various issues related to it with
Goetsch. This discovery dispute concerns Goetsch's handwritten notes, made of
conversations about the corrosion claim during various meetings that involved
Westmoreland, Milhollin, or other representatives of Underwriters, all of which occurred
between August 1998 and June 2001. 

 B. Westmoreland's Firm Asserts It Was Unaware Of Goetsch's Notes 


 After the policyholders filed suit, Underwriters authorized Westmoreland's law firm 
to act as their lead counsel. In the course of handling the lawsuit, J. Clifton Hall III, an
attorney with Westmoreland's firm, requested that Steege Kingston provide him with a copy
of its file. After receiving Steege Kingston's file, Hall reviewed it and, during discovery, 
produced various portions of the file that he considered to be unprotected by privilege.
According to Hall's affidavit, which was provided in connection with Underwriters' motion
to compel a return of the notes, Steege Kingston assured Hall that "they had given us
everything that they had." In that same affidavit, Hall stated that Goetsch's notes were not
in the material that Steege Kingston gave him in response to his request for its file.

 Ultimately, the policyholders' attorney caused a subpoena for the file to be served on
Steege Kingston. After receiving notice that the subpoena had issued, Hall contacted Chuck
Madeley, Steege Kingston's President, who told him that "the file to be produced was the
exact same file that had previously been provided to [your] office." On October 11, 2006,
Steege Kingston then produced its file to the court reporter, and on November 1, 2006, Hall
received a copy. Neither Hall nor anyone with his firm reviewed the subpoenaed records
until March 11, 2007, the day prior to the date that another of Steege Kingston's adjusters
was to be deposed. Hall's affidavit indicates they believed the records that Hall had received
earlier from Steege Kingston would be the same as those Steege Kingston had produced in
response to the subpoena. On that evening of March 11, according to Hall, Milhollin
discovered that Steege Kingston's complete file included Goetsch's handwritten notes.

 C. Efforts to Recover The Notes


 After discovering the existence and the production of Goetsch's notes, Milhollin
asserted Underwriters' privilege claim during the March 12 deposition. She also requested
that the documents subject to privilege be returned. Policyholders refused that request and
other subsequent requests by Underwriters asking them to return Goetsch's notes. In
explanation of their refusal, the attorneys for the policyholders stated the notes were not
subject to the "snap-back" provision and were not protected by any privileges.

 On April 17, 2007, Underwriters filed a motion in the trial court seeking to compel
the return of Goetsch's notes, citing the "snap-back" provision of Rule 193.3(d) of the Texas
Rules of Civil Procedure. In September 2007, following a hearing in August 2007, the trial
court appointed a special master who had served as both a trial judge and appellate justice,
asked that the special master advise if the "snap-back" rule applied, and invited the special
master to advise the court whether Goetsch's notes, or portions of them, were privileged. 
Subsequently, in March 2008, the special master recommended that the trial court grant
Underwriters' motion, and advised the trial court that the documents were both privileged
and inadvertently produced.

 The policyholders filed objections to the special master's report, and after both sides
filed briefs and supplemental responses, the trial court held another hearing to rule on
Underwriters' motion. At that time, and without entering any findings or conclusions, the
trial court denied Underwriters' motion. Afterwards, no party asked the court to enter
findings and conclusions. Underwriters then filed a petition for a writ of mandamus seeking
our review of the trial court's decision.

II. Standard of Review


 Mandamus relief exists only to correct a clear abuse of discretion for which the
relators have no adequate remedy by appeal. In re Prudential Ins. Co. of Am., 148 S.W.3d
124, 135-36 (Tex. 2004). The party that resisted discovery, but was nevertheless ordered to
produce by the trial court, has the burden to establish both requirements. In re CSX Corp.,
124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). Abuse of discretion occurs when a trial
court orders discovery that exceeds the scope permitted by the rules of procedure. Id. at 152. 
III. Are the Documents Privileged?


 The documents in issue consist of fifty-seven pages of handwritten notes dated
between August 3, 1998 and June 27, 2001. The notes were made by Brian Goetsch, a
Steege Kingston senior vice-president. Goetsch's notes during this period generally reflect
what occurred during telephone conversations and meetings that involved, at various points,
employees of Steege Kingston, Underwriters' attorneys (Hall and Milhollin), and several of
Underwriters' claims representatives. According to Westmoreland's affidavit, the
communications reflected by the notes were confidential, in furtherance of his legal
representation, and contained his "legal advice, theories, opinions, conclusions, mental
analyses, and evaluations regarding the claims."

 We have reviewed the notes, which were produced to the trial court in camera, and
believe that Westmoreland's affidavit is descriptive of the information reflected in Goetsch's
notes. Goetsch's notes generally contain the type of information an attorney would gather
in the investigation of an insurance claim of this type, reflect the issues that Westmoreland
identified as being significant legal issues, and also indicate that Westmoreland became
involved due to coverage issues.

 In the trial court, and on appeal, Underwriters argues the work product privilege 
served as one reason that Goetsch's notes were not discoverable. The work product privilege
is contained in Rule 192.5 and protects materials and mental impressions prepared "in
anticipation of litigation" from discovery. (2)
 The applicability of the work product privilege to Goetsch's notes, which is the substance of the dispute between the parties, centers on
whether they were "made in anticipation of litigation." See Tex. R. Civ. P. 192.5(a)(1)-(2).

 Policyholders argue that Goetsch's notes are not work product because he made them,
in large part, before Underwriters issued its reservation-of-rights letter (July 1, 1999), and
before Underwriters issued a denial of the claim (July 16, 2003). Consequently, the
policyholders contend that Goetsch's notes do not qualify for protection from discovery as
work product.

 In support of the argument that the work product privilege does not extend to
information created before the date of the insurer's denial, the policyholders rely on In re
Texas Farmers Insurance Exchange, 990 S.W.2d 337, 341 (Tex. App.-Texarkana 1999, orig.
proceeding). In Farmers, an attorney hired by a homeowner's insurer examined the 
homeowner under oath following a fire that occurred at the home. The attorney who
conducted the examination under oath then testified at a subsequent hearing addressing
Farmers' objections to producing the attorney's file. The attorney testified "that he was not
told that Farmers anticipated litigation at the time he was hired, nor did he tell the Chappells
that he was hired to take their EUOs in anticipation of litigation." Id. at 342. 

 The case before us differs significantly from Farmers. Here, the record reflects that
Westmoreland specifically advised Underwriters to anticipate litigation. According to
Westmoreland, at the time he became involved in handling this claim, one of the same
policyholders was "involved in several lawsuits regarding the Puerto Plata plant, []had
tendered the same claims to several insurers, and [he] knew that [the policyholder] had
threatened at least one other insurer with a lawsuit." Further, as early as May 1997,
according to Westmoreland's affidavit, "Underwriters had already reserved their rights to
pursue a declaratory judgment action in a letter [he] sent to [Smith/Enron]." Thus,
Westmoreland, unlike the Farmers' attorney, provided evidence supporting Underwriters'
assertion that litigation was anticipated on this claim.

 The policyholders also rely on the testimony of David Cesario, a former Steege
Kingston employee, to support their claim that Underwriters, at the time Goetsch's notes
were made, had not yet anticipated litigation. Cesario's testified that he had no "knowledge
of discussing with [Brian] Goetsch . . . the anticipation of litigation over any of these claims." 
Additionally, the policyholders point to a statement in the affidavit accompanying the Steege
Kingston response to the subpoena for documents, in which Charles Madeley, Steege
Kingston's president, stated that the documents it produced were made by Steege Kingston
in the ordinary course of its business. The policyholders contend that Cesario's and Madely's
statements are evidence sufficient to allow the trial court to reject Underwriters claim that
it had anticipated litigation during the period covered by Goetsch's notes.

 Cesario's deposition and Madeley's affidavit do not establish that either had personal
knowledge of the date that Underwriters reasonably anticipated litigation. The fact that
Cesario did not discuss the issue with Goetsch does not show that Goetsch did not anticipate
litigation; it simply proves that the two did not discuss the issue. Madeley's affidavit does
not address the date that Underwriters anticipated litigation. Absent their personal
knowledge, the statements by Cesario and Madeley do not address the question in issue and
do not have "any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be without the
evidence." See Tex. R. Evid. 401. We disagree that their statements are sufficient to explain
the basis of the trial court's denial of Underwriters' motion.

 In this record, Westmoreland's affidavit and the content of the notes are the only
evidence we find that address the date on which Underwriters reasonably anticipated
litigation. Westmoreland's affidavit states: "I advised Underwriters in August 1998 to
anticipate litigation from Plaintiffs regarding their claims for coverage under the Builders
Risk policy." As Goetsch's notes reflect, Westmoreland and other attorneys from his firm
were directly involved in the majority of the conversations covered by the notes. While
Goetsch's notes reflect at one point a desire to "avoid litigation," the notes also reflect that
there were discussions about reserving rights and issuing denials. In the context of this
record, the expressed desire "to avoid litigation" does not prove that Underwriters did not
anticipate litigation, but instead supports Underwriters' argument that in August 1998 they
held a subjective belief of a substantial chance of litigation. Moreover, Goetsch's notes do
not reflect that during this period any settlement proposals were being considered, or that any
funds were authorized by Underwriters to attempt a pre-suit settlement. There is also no
evidence that involving an attorney for the purpose of evaluating insurance coverage in
response to claims generally was a routine and ordinary practice by Underwriters. 

 The Texas Supreme Court has held: "Common sense dictates that a party may
reasonably anticipate suit being filed, and conduct an investigation to prepare for the
expected litigation, before the plaintiff manifests an intent to sue." National Tank Co. v.
Brotherton, 851 S.W.2d 193, 204 (Tex. 1993). Common sense, as well as a review of the
record, reflects that Underwriters had a reasonable basis for its belief that there was a
substantial chance of litigation during the time period covered by Goetsch's notes. 

 While abuse of discretion is the standard of review for mandamus proceedings, legal
sufficiency, while not an independent ground of error, is a relevant factor in assessing
whether the trial court abused its discretion. In re Prudential, 148 S.W.3d at 135-36; see
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); see also West v. Solito,
563 S.W.2d 240, 245 (Tex. 1978). If the trial court concluded that Underwriters did not
anticipate litigation before the date it issued its denial letter, we disagree that the evidence
in this record is legally sufficient to support that conclusion. The only probative evidence
in this record on the date Underwriters anticipated litigation supports Underwriters' claim
that litigation was anticipated during the period involving Goetsch's notes.



Does Any Exception To The Work Product Privilege Apply? 
 

 Next, we address whether any exception applies to any of the parts of Goetsch's notes. 
A large number of the pages that comprise Goetsh's notes reveal core work product, as they
reflect the mental impressions, opinions, conclusions or legal theories of either Underwriters'
representatives or their attorneys. See Tex. R. Civ. P. 192.5(b)(1). With respect to core work
product, Rule 192.5(b) simply provides that core work product is "not discoverable." Id. 

 To the extent that portions of Goetsch's notes are work product because they were
prepared in anticipation of litigation, but are not "core work product," those parts are subject
to discovery "only upon a showing that the party seeking discovery has substantial need of
the materials in the preparation of the party's case and that the party is unable without undue
hardship to obtain the substantial equivalent of the material by other means." Tex. R. Civ.
P. 192.5(b)(2). 

 We are not persuaded that the substantial need and undue hardship exception allows
the policyholders to retain Goetsch's notes. In the trial court, the policyholders made no
argument that their substantial need permitted their discovery of Goetsch's notes. Further,
the policyholders make no substantial-need argument in this proceeding. Also, the
policyholders do not argue that the information in Goetsch's notes falls within any of the
work-product exemptions contained by Rule 192.5(c). (3) See Tex. R. Civ. P. 192.5(c). 

 Having considered the evidence in the record, along with the arguments raised in the
trial court and on appeal, we hold that Goetsch's notes are subject to the work-product
privilege, and that no exception allows their discovery. We next consider whether Rule
193.3(d) applies.

IV. The "Snap-Back" Provision


 Policyholders argue that Rule 193.3(d) (known as the "snap-back" provision), by its
terms, does not apply when a nonparty to the lawsuit produces the documents. See Tex. R.
Civ. P. 193.3(d); In re Christus Spohn Hosp. Kleberg, 222 S.W.3d 434, 435 (Tex. 2007)
(orig. proceeding). Underwriters asserts that Rule 193.3(d) entitles them to have their
documents returned. With respect to Goetsch's notes, Underwriters further contends they
have not waived their right to assert their privileges.

 Rule 193.3(d) provides:

 (d) Privilege Not Waived by Production. A party who produces
material or information without intending to waive a claim of privilege does
not waive that claim under these rules or the Rules of Evidence if-within ten
days or a shorter time ordered by the court, after the producing party actually
discovers that such production was made-the producing party amends the
response, identifying the material or information produced and stating the
privilege asserted. If the producing party thus amends the response to assert
a privilege, the requesting party must promptly return the specified material or
information and any copies pending any ruling by the court denying the
privilege.


Tex. R. Civ. P. 193.3(d). Policyholders' argument is straightforward. According to them,
Rule 193.3(d) by its express terms applies only when a "party" to the lawsuit has produced
the documents in dispute; therefore, policyholders conclude that the rule does not apply when 
a nonparty to the suit produced the documents.

 Instead, the policyholders contend that Rule 511 of the Texas Rules of Evidence
governs the resolution of waiver arguments that involve production by nonparties to the
lawsuit. Rule 511 of the Texas Rules of Evidence provides, in pertinent part:

 A person upon whom these rules confer a privilege against disclosure
waives the privilege if: (1) the person or a predecessor of the person while
holder of the privilege voluntarily discloses or consents to disclosure of any
significant part of the privileged matter unless such disclosure itself is
privileged[.] . . . .


Tex. R. Evid. 511. In summary, the policyholders contend that by using the term "person," 
as opposed to the term "party," Rule 511 applies to nonparties. 

V. Rule 193.3(d)


A. Analysis


 Policyholders' argument restricts the meaning of the Rule 193.3(d)'s language, "party
who produces," to encompass only the parties to the lawsuit. Underwriters, in reply, contend
that the "snap-back" provision was intended to permit a remedy to the inadvertent production
of records by parties or by nonparties. Because the rules do not expressly define the term
"party who produces," it is not clear that Rule 193.3(d) is confined to reach only parties to
a suit. 

 To determine the proper meaning of a rule of procedure, courts use the same rules of
construction that are applied in construing statutes. Christus, 222 S.W.3d at 437. In
resolving whether Rule 193.3(d) was intended to reach production by an entity that is not a
party to the lawsuit, but is a party to the production request, we first consider how the rules
treat the scope of the privilege by examining a related issue: who has standing to assert a
privilege when the party with the privilege is not the party possessing the documents. The parties holding rights to assert the work-product privilege are not always
coextensive with the persons named as parties in a lawsuit. See In re Bexar County Criminal
Dist. Attorney's Office, 224 S.W.3d 182, 184-5 (Tex. 2007). Further, either the holder of the
privilege or certain others on the holder's behalf may generally assert the privilege. See In
re Ford Motor Co., 211 S.W.3d 295, 301 (Tex. 2006) (stating that "[u]nder Texas law,
discovery privileges are waived by voluntary disclosure by the holder of the privilege"); see
also Tex. R. Evid. 503(c) (recognizing that the lawyer-client privilege may be claimed by
the client, or by the client's representative on behalf of the client); Tex. R. Evid. 504(a)(3)
(stating that the husband-wife privilege may be claimed by the spouse or the spouse's
representative); Tex. R. Evid. 505(c) (stating that the clergy-communications privilege may
be asserted by the person or the person's guardian, or the member of the clergy to whom the
communication was made "but only on behalf of the communicant"); Tex. R. Evid. 509(d)
(stating that the physician-patient privilege may be claimed by the patient, the patient's
representative, or the physician, who may claim it "only on behalf of the patient"); Tex. R.
Evid. 510(c) (providing a similar provision for who may claim the privilege regarding
mental-health information); Tex. R. Evid. 511 (providing for a waiver of a privilege if the
holder voluntarily discloses or consents to the disclosure of privileged matters). As these
rules demonstrate, the right to assert the existence of a privilege is not generally dependent
upon physical possession of a document; instead, the privilege, and the right to assert it,
relate to the class of persons who would have information subject to the privilege. 

 Because the law allows privileged information to be shared for certain purposes with
specific others, privilege rules are necessarily designed to apply to persons other than the
privilege's holder. Should the "snap-back" provision apply only to the parties to the suit, 
that interpretation would effectively negate the privilege holder's enforcement rights when
nonparties to the suit produce privileged information. Thus, we conclude that an
interpretation of Rule 193.3(d) to read "party who produces" as meaning "party to the lawsuit
who produces" would allow, rather than discourage, efforts to obtain privileged information
from nonparties. 

 It is clear that a person may be a party who produces information related to a lawsuit
without necessarily also being a party to the suit, as nonparties can be subpoenaed to require
their cooperation in a civil suit. Tex. R. Civ. P. 205.1-.3. By employing the term "party who
produces," we do not perceive any intent by the drafters of Rule 193.3(d) to constrict the
Rule's application solely to those that are named as parties in a suit. 

 Because the discovery rules often apply to reach information not within a party's
physical possession, the party may often not have actual knowledge of the existence of
information or documents in the possession of others but may be nevertheless obligated to
gain knowledge of them. For instance, under the discovery rules, serving a request for
production of documents on a party creates a duty on the party to "produce a document or
tangible thing that is within the person's possession, custody, or control." Tex. R. Civ. P.
192.3(b). In turn, the terms "possession, custody, or control" are broadly defined to mean
"that the person either has physical possession of the item or has a right to possession of the
item that is equal or superior to the person who has physical possession of the item." Tex.
R. Civ. P. 192.7(b). Thus, in evaluating the scope of a given request to produce, the duty to
produce is not always satisfied by producing the documents that are in the party's immediate
physical possession. When examining the discovery rules that apply to those named as
parties to the suit, the duty to satisfy document requests may often extend to documents in
the possession of persons or entities that are not parties to the suit. See Tex. R. Civ. P.
192.7(b). 

 Consequently, in responding to the policyholders' request, Underwriters had a duty
to obtain the Steege Kingston documents subject to its control and to follow Rule 193.3 in
withholding documents from production on the grounds of privilege, if Steege Kingston had
actually provided Goetsch's notes to Underwriters. See Tex. R. Civ. P. 192.7(b), 193.3(a). 
Thus, discovery under the Texas Rules of Procedure is often not narrowly confined to
documents whose existence is known by the party, as illustrated here by Underwriters'
assertion that it did not know of the existence of Goetsch's notes. 

 Privileges like the work-product privilege itself also extend beyond documents
physically in the party's possession, and may often extend to information in the possession
of nonparties as well. Rule 192.5 defines the work-product privilege in terms of the material
or mental impressions developed by the party or the party's representatives, and does not
define the privilege in terms of who possesses the documents containing privileged
information. See Tex. R. Civ. P. 192.5(a)(1). In summary, a party to a lawsuit has discovery
privileges that may often extend beyond the documents and information in its actual physical
possession. The drafters of the "snap-back" provision were undoubtedly aware of the broad
reach of the work-product privilege to information as well as documents, as well as the broad
reach of rules governing discovery from nonparties. 

 The rules governing discovery from nonparties incorporate by reference the "snap-back" provision. They do so through the provisions of Rule 205 and Rule 176.6. Generally,
Rule 205 controls the methods of discovery from nonparties. See Tex. R. Civ. P. 205
(Discovery from Nonparties). With respect to a subpoena duces tecum served on a nonparty,
Rule 205.3(d) provides: "The nonparty must respond to the notice and subpoena in
accordance with Rule 176.6." Tex. R. Civ. P. 205.3(d). In turn, Rule 176.6(c), provides that
in responding: "A person may withhold material or information claimed to be privileged but
must comply with Rule 193.3." Thus, by virtue of Rule 205.3(d)'s reference to Rule
176.6(c), and Rule 176.6(c)'s reference to Rule 193.3, nonparties may also utilize the "snap-back" provision to remedy the inadvertent production of their own privileged documents. 
See Tex. R. Civ. P. 176.6(c), 193.3, 205.3(d). 

 It is also apparent that the promulgators of the current rules of discovery made a
significant effort to change prior discovery procedures in order "to avoid waiver by a party
when privileged materials or information may be at issue." In re Lincoln Elec. Co., 91
S.W.3d 432, 436 (Tex. App.-Beaumont 2002) (orig. proceeding). Comment 4 to Rule 193.3,
which applies to discovery filed after January 1, 1999, addresses Rule 193.3(d)'s purpose,
and states: 

 4. Rule 193.3(d) is a new provision that allows a party to assert a claim
of privilege to material or information produced inadvertently without
intending to waive the privilege. The provision is commonly used in complex
cases to reduce costs and risks in large document productions. The focus is on
the intent to waive the privilege, not the intent to produce the material or
information. A party who fails to diligently screen documents before
producing them does not waive a claim of privilege. This rule is thus broader
than Tex. R. Evid. 511 and overturns Granada Corp. v. First Court of
Appeals, 844 S.W.2d 223 (Tex. 1992), to the extent the two conflict. The ten-day period (which may be shortened by the court) allowed for an amended
response does not run from the production of the material or information but
from the party's first awareness of the mistake. To avoid complications at
trial, a party may identify prior to trial the documents intended to be offered,
thereby triggering the obligation to assert any overlooked privilege under this
rule. A trial court may also order this procedure. 

 

See Tex. R. Civ. P. 193.3, cmt. 4; 61 Tex. B.J. 1140 , 1151, 1153 (1998). Thus comment 4
does not indicate an intent to limit subsection (d)'s application in circumstances similar to
those involved here. Tex. R. Civ. P. 193.3, cmt. 4. In light of comment 4 (which expressly
states an intent to overturn Granada) and the application of Rule 193.3 to both parties and
nonparties, it is clear to us that Rule 193.3(d) was intended to restrict the waiver doctrine in
a variety of situations that might arise from inadvertent disclosures of privileged documents.
Compare Granada, 844 S.W.2d at 226 with Rule 193.3, cmt. 4 and Rule 193.3(d).

 Moreover, comment 4 appears inconsistent with the policyholders' contention that the
drafters of Rule 193.3(d) intended it to be interpreted narrowly so that it would remedy only
inadvertent disclosures by a named party to the suit. Generally, under the rules of statutory
construction, which are used to construe rules of procedure, remedial statutes are construed
by courts broadly. See Christus, 222 S.W.3d at 437; Burch v. City of San Antonio, 518
S.W.2d 540, 544 (Tex. 1975); City of Mason v. W. Tex. Utils. Co., 150 Tex. 18, 237 S.W.2d
273, 280 (1951). Specifically, "[i]f a statute is curative or remedial in its nature, the rule is
generally applied that it be given the most comprehensive and liberal construction possible." 
City of Mason, 237 S.W.2d at 280. 

 In support of its argument to limit the remedy provided by Rule 193.3(d) to the parties
to the lawsuit, the policyholders rely on In re Ortuno, No. 14-08-00227-CV, 2008 Tex. App.
LEXIS 3396, at *5 (Tex. App.-Houston [14th Dist.] May 6, 2008, orig. proceeding) (mem.
op.). In Ortuno, the Fourteenth Court of Appeals reasoned that Rule 193.3 could not be used
to remedy the production of a patient's privileged medical record because the record had
been produced by a nonparty to the suit, a hospital. Id. 

 We disagree with the conclusion reached in Ortuno, and we conclude that the term
"party who produces," as used in Rule 193.3(d), was not intended to limit the right of a party
to file objections to a nonparty's production of privileged documents. Our conclusion is
based on the history of Rule 193.3(d), the broad reach of the rules of privilege to information
possessed by parties and nonparties, the structure of the rules of discovery to allow discovery
to reach information in the possession of both parties and nonparties, and the remedial
purpose of Rule 193.3. 

 Consequently, Underwriters, as the holder of the privilege, had a right to rely on Rule
193.3(d) to protect them against the inadvertent waiver of their privileges. We hold that
Underwriters can utilize Rule 193.3(d) as the procedural basis to obtain the return of
Goetsch's notes. Therefore, to the extent the trial court relied on the policyholders' argument 
that Rule 193.3(d) did not apply, the trial court misapplied the law. 

 B. Underwriters' Objections


 The policyholders also argue that Rule 193.3(d) does not apply because it requires the
party, within ten days of its actual discovery of the production, to amend its response, identify
the material or information produced, and state the privilege asserted. Tex. R. Civ. P.
193.3(d). The policyholders contend that Underwriters did not file an amended response, and
further contend that by waiting until March 12, 2007, to assert their privileges, they failed
to comply with the Rule's window (ten days from actual knowledge) to timely file their
objections.

 Although Underwriters acknowledge receiving Steege Kingston's complete file in
November 2006, Underwriters assert that they complied with the requirements of Rule
193.3(d) because they did not actually learn of the existence of the privileged documents
until March 2007. On the day after Underwriters learned of the existence of Goetsch's notes,
its attorneys requested that the notes be returned, and then again requested their return in a
letter dated March 15, 2007. The policyholders contend that Underwriters' objections at the
deposition and their subsequent letter are not sufficient to constitute an amendment to Steege
Kingston's response to their subpoena.

 To evaluate whether Underwriters' actions in objecting and filing a letter constitute
an amendment within the meaning of Rule 193.3(d), we observe that Underwriters had
standing to file objections to the subpoena the policyholders caused to be served on Steege
Kingston. See Tex. R. Civ. P. 192.6(a) (authorizing any person affected by the discovery to
move for a protective order within the time permitted for discovery). It is undisputed that
Underwriters did not file objections at that time. 

 The rules specific to discovery impose a general duty to file amended or supplemental
responses to discovery "[i]f a party learns that the party's response to written discovery was
incomplete or incorrect when made, or although complete and correct when made, is no
longer complete and correct. . . ." Tex. R. Civ. P. 193.5(a). Thus, Underwriters' objections
and letter corrected their prior nonresponse by notifying the policyholders of their objections
to Steege Kingston's production of privileged matters. 

 Here, the policyholders do not dispute that Underwriters objected to Steege
Kingston's production of Goetsch's notes during the March 12 deposition, and then again
in a letter dated March 15, 2007 addressed to the policyholders' attorney of record. We
conclude that Underwriters' objections during the deposition and the letter that followed
were sufficient to amend Underwriters' prior failure to object in response to Steege
Kingston's being served with a subpoena to produce its file. If the trial court reasoned that
Underwriters' objections did not constitute an amendment within the meaning of Rule
193.3(d), the trial court erred in its application of that rule. See Tex. R. Civ. P. 193.3(d).

 C. Were Underwriters' Objections Timely?


 Next, we address whether Underwriters' response, which amended their prior non-response, occurred within ten days of their "actual discovery" of Steege Kingston's
production of Goetsch's notes. See Tex. R. Civ. P. 193.3(d). Comment 4 to Rule 193.3(d)
establishes that the Rule's focus is on the intent to waive the privilege, not the intent to
produce the material or information. See 61 Tex. B.J. at 1153. In our opinion, Rule
193.3(d)'s requirement of "actual discovery" focuses the inquiry on whether the party
holding the privilege intended to waive it. By establishing a standard of actual knowledge,
evidence that a party should have known privileged documents were produced is insufficient
under Rule 193.3(d) to adequately support a trial court's implied finding that the waiver of
a privilege occurred. 

 In determining the date that Underwriters actually became aware of the production 
of Goetsch's notes, all of the facts and circumstances are evaluated in order to determine
their actual subjective state of mind. See generally Louisiana-Pacific Corp. v. Andrade, 19
S.W.3d 245, 248 (Tex. 1999); General Motors Corp. v. Sanchez, 997 S.W.2d 584, 596 (Tex. 
1999). Therefore, we examine all of the evidence in this record relevant to Underwriters'
actual knowledge of the existence and production of Goetsch's notes. 

 In support of its motion, Underwriters filed several affidavits, including the affidavit
of Hall, who was their attorney in charge of the litigation. See Tex. R. Civ. P. 8. Hall's
affidavit stated that the documents Steege Kingston produced in response to the subpoena
were provided to his office. However, his affidavit further stated that after his firm received
the subpoenaed records, "No one in our office was instructed to, or did, review the copy of
the Steege Kingston production at that time because Steege Kingston had advised us that it
was the exact same production that was already in our possession." Hall then explained why,
for various reasons, the documents Steege Kingston produced in response to the subpoena
were not reviewed until March 11, 2007.

 According to the policyholders, because "Underwriters had the production in their
office for over four-and-a-half months[,]" the trial court could believe that Underwriters
knew of Goetsch's notes earlier and could therefore reject Underwriters' claim that they only
discovered Goetsch's notes in March. The policyholders' argument also relies on inferences
from the answers under oath provided by Madeley, Steege Kingston's president, in response
to their deposition on written questions for Steege Kingston's records. In the affidavit
accompanying Steege Kingston's response to the subpoena, Madeley stated that he had
previously produced "these records" to Hall, and explained that he had not been instructed
to withhold any documents on privileged grounds. Thus, the policyholders argue that 
Madeley's affidavit, or Underwriters' undisputed possession of the privileged documents 
in November 2006, allowed the trial court to infer that Underwriters had actual knowledge
of the existence and production of Goetsch's notes more than ten days before Underwriters
lodged objections to the notes' production. 

 While evidence that documents are sent creates an inference that the documents were
reviewed around that time, that inference vanishes when opposing evidence is introduced to
show that the document was not reviewed. See generally Wembley Inv. Co. v. Herrera, 11
S.W.3d 924, 927 (Tex. 1999) (presumption of receipt vanishes when proof is introduced that
the document was not received); Cliff v. Huggins, 724 S.W.2d 778, 780 (Tex. 1987) (proof
of non-receipt rebuts evidence that a document was sent). Here, the evidence relied upon by
the policyholders proves only that Underwriters should have known of the existence of the
privileged documents at an earlier date than it actually knew of them; this evidence does not
establish that Underwriters had actual knowledge before March 11 that Goetsch's notes
existed or had been produced in discovery. 

 In our opinion, the only relevant evidence in the record establishes that Underwriters' 
knew on March 11, and not earlier, that Goetsch's notes were produced in discovery. 
Considering the entire record, we conclude that any presumption or inference arising in the
absence of evidence was rebutted. In the absence of further evidence to create a fact issue
on the date of actual discovery, we hold that Underwriters established that it complied with
Rule 193.3(d)'s ten-day window, and we further hold that there is no legally sufficient
evidence in the record proving otherwise. See In re Prudential, 148 S.W.3d at 135-36; 
Buller, 806 S.W.2d at 226; West, 563 S.W.2d at 245.

 In summary, we conclude the documents in issue were privileged, Rule 193.3(d)
required the return of the documents, Underwriters properly requested their return, and the
trial court abused its discretion in refusing to compel the policyholders to return Goetsch's
notes. Accordingly, we conditionally grant mandamus relief and direct the trial judge to
vacate his January 29, 2009, order and enter an order requiring the policyholders to promptly
return the privileged documents and any copies. (4) With respect to the relief granted herein,
we are confident the trial court will comply, and the writ will issue only if the trial court fails
to act promptly in accord with this opinion.

 WRIT OF MANDAMUS CONDITIONALLY GRANTED. 


 PER CURIAM


Submitted on May 28, 2009

Opinion Delivered August 27, 2009

Before Gaultney, Kreger, and Horton, JJ.
1. The underwriters, who are the relators in this proceeding, include the following insurance
companies: Certain Underwriters at Lloyds, Commercial Union Assurance Company (U.K.), Tokio
Marine and Fire Insurance (U.K.) Ltd., Phoenix Assurance Public Limited Company (U.K), Northern
Assurance Company Lt. M A/C (U.K), Compagnie D' Assurances Maritimes Aeriennes et
Terrestries (U.K.), Assurances Generales de France I.A.R.T. (U.K.), Terra Nova Insurance Company
Ltd. (U.K.), Indemnity Marine Assurance Company Ltd. (U.K.), Ocean Marine Insurance Company
Ltd. (U.K.), Assicurazioni Generali S.p.A. (U.K.), AXA Marine & Aviation Insurance (UK) Ltd.,
Skandia Marine Insurance Company (UK) Ltd., and Zurich Reinsurance (UK) Ltd.
2. Rule 192.5 provides:

 

 (a) Work Product Defined. Work product comprises:

 (1) material prepared or mental impressions developed in anticipation
of litigation or for trial by or for a party or a party's representatives, including
the party's attorneys, consultants, sureties, indemnitors, insurers, employees,
or agents; or

 (2) a communication made in anticipation of litigation or for trial
between a party and the party's representatives or among a party's
representatives, including the party's attorneys, consultants, sureties,
indemnitors, insurers, employees, or agents.

 

 (b) Protection of Work Product.

 (1) Protection of Core Work Product-Attorney Mental Processes. Core
work product-the work product of an attorney or an attorney's representative
that contains the attorney's or the attorney's representative's mental
impressions, opinions, conclusions, or legal theories-is not discoverable.

 (2) Protection of Other Work Product. Any other work product is
discoverable only upon a showing that the party seeking discovery has
substantial need of the materials in the preparation of the party's case and that
the party is unable without undue hardship to obtain the substantial equivalent
of the material by other means.

 (3) Incidental Disclosure of Attorney Mental Processes. It is not a
violation of subparagraph (1) if disclosure ordered pursuant to subparagraph
(2) incidentally discloses by inference attorney mental processes otherwise
protected under subparagraph (1).

 (4) Limiting Disclosure of Mental Processes. If a court orders
discovery of work product pursuant to subparagraph (2), the court must-
insofar as possible-protect against disclosure of the mental impressions,
opinions, conclusions, or legal theories not otherwise discoverable.


 (c) Exceptions. Even if made or prepared in anticipation of litigation or

 for trial, the following is not work product protected from discovery:

 (1) information discoverable under Rule 192.3 concerning experts, trial
witnesses, witness statements, and contentions;

 (2) trial exhibits ordered disclosed under Rule 166 or Rule 190.4;

 (3) the name, address, and telephone number of any potential party or
any person with knowledge of relevant facts;

 (4) any photograph or electronic image of underlying facts (e.g., a
photograph of the accident scene) or a photograph or electronic image of any
sort that a party intends to offer into evidence; and

 (5) any work product created under circumstances within an exception
to the attorney-client privilege in Rule 503(d) of the Rules of Evidence.


 (d) Privilege. For purposes of these rules, an assertion that material or
information is work product is an assertion of privilege.

3. Underwriters did contend that Goetsch's notes were protected from discovery by the
attorney-client privilege, but the policyholders responded by arguing that the attorney-client
privilege does not apply for several reasons, including that Steege Kingston, and its
employee, Goetsch, do not qualify as "representatives of the client." See Tex. R. Evid.
503(a)(2)(defining "representative of the client" for purposes of the attorney-client privilege). 
We expressly do not reach, nor do we resolve whether the attorney-client privilege applies
in light of our holding that Goetsch's notes are privileged as work product. See Tex. R. App.
P. 47.1. 
4. We note that Rule 193.3(d) contemplates the return of documents asserted to be
privileged and produced inadvertently upon the objecting party filing an amended response,
and we observe that the policyholders expressly refused to comply with that requirement. 
While the argument that Rule 193.3(d) does not apply is pursued in good faith, the better
practice is for parties to return documents asserted to be within the ambit of Rule 193.3(d)
pending the ruling of the trial court, and we believe that policyholders should have done so
here.